(No. 73463.—

JOHNNY JONES *et al.*, Appellants, v. RICHARD O'YOUNG, M.D., *et al.*, Appellees.

*Opinion filed December 4, 1992.*

40

John B. Schwartz and Stephen J. Caron, of John B. Schwartz & Associates, of Chicago, for appellants.

Martin A.A. Diestler, of Rooks, Pitts & Poust, of Wheaton, for appellee Richard O'Young.

David J. Loughnane and Charles F. Redden, of Pretzel & Stouffer, Chrtd., of Chicago (Robert Marc Chemers and Scott O. Reed, of counsel), for appellee Armando Pacis.

Francis D. Morrissey, John W. Dondanville and Michael A. Pollard, of Baker & McKenzie, of Chicago, for appellee Ramasamy Kalimuthu.

Bruce Robert Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE CLARK delivered the opinion of the court:

Johnny Jones and Loretta Jones, plaintiffs, brought a medical malpractice action in the circuit court of Cook County against Roseland Community Hospital and Doctors Richard O'Young, Armando Pacis, Ramasamy Kalimuthu and James So. Roseland and Dr. So were voluntarily dismissed from plaintiffs' action and are not a party to this appeal. Dr. Kalimuthu is board certified in plastic surgery and general surgery. Dr. O'Young is an orthopedic surgeon and Dr. Pacis is a general surgeon.

Johnny Jones was injured in an automobile accident on April 15, 1985. He was brought to Roseland Hospital, where surgery was performed on his left leg. In the hospital, he developed an infectious process in the fractured leg known as pseudomonas osteomyelitis. Plaintiffs claimed that defendants' negligence led to the amputation of Jones' left leg.

In August 1989, plaintiffs answered Supreme Court Rule 220 interrogatories by identifying Dr. Malcolm

Deam as their expert witness against defendants. Dr. Deam is board certified in internal medicine and infectious diseases. Doctors Kalimuthu, O'Young and Pacis moved *in limine* to bar Dr. Deam's testimony as an expert at trial. A hearing was held on Dr. Deam's qualifications on January 14, 1992. Following the hearing, the trial court granted the defendants' motion to bar Dr. Deam's testimony regarding the standard of care applicable to them. The court certified a question of law under this court's Rule 308.

Defendants then filed motions for summary judgment, which the trial court denied without prejudice pending the result of plaintiffs' application for leave to appeal.

Plaintiffs' Rule 308 application was denied by the appellate court on February 26, 1992. This court granted plaintiffs' petition for leave to appeal from that order of the appellate court. (134 Ill. 2d R. 315.) *Amicus curiae* Illinois Trial Lawyers Association has filed with this court a brief in support of plaintiffs.

In its order granting defendants' pretrial motions, the trial court concluded that there was a conflict in the appellate court among its opinions in *Thomas v. University of Chicago Lying-In Hospital* (1991), 221 Ill. App. 3d 919, *Northern Trust Co. v. UpJohn Co.* (1991), 213 Ill. App. 3d 390, and *Petkus v. Girzadas* (1988), 177 Ill. App. 3d 323. The court certified the following question of law:

"In order to testify concerning the standard of care required of and deviations from the standard of care by a defendant physician specializing in an area of medicine, must the plaintiff's expert also specialize in the same area of medicine as the defendant, so that, in this case, the plaintiff's infectious disease specialist would not be qualified to testify against the defendant plastic surgeon, orthopedic surgeon, or general surgeon with regard to

each defendant's care and treatment of the infectious disease, Pseudomonas osteomyelitis?"

We answer the question in the negative. We are not reviewing the trial court's decision as to the competency of Dr. Deam to testify and are considering only the question certified by the trial court. See *Purtill v. Hess* (1986), 111 Ill. 2d 229, 251.

In *Purtill v. Hess* (1986), 111 Ill. 2d 229, this court articulated the requirements necessary to demonstrate an expert physician's qualifications and competency to testify. First, the physician must be a licensed member of the school of medicine about which he proposes to testify. (*Purtill*, 111 Ill. 2d at 242-43, citing *Dolan v. Galluzo* (1979), 77 Ill. 2d 279.) Second, "the expert witness must show that he is familiar with the methods, procedures, and treatments ordinarily observed by other physicians, in either the defendant physician's community or a similar community." (*Purtill*, 111 Ill. 2d at 243.) Once the foundational requirements have been met, the trial court has the discretion to determine whether a physician is qualified and competent to state his opinion as an expert regarding the standard of care. *Purtill*, 111 Ill. 2d at 243.

By hearing evidence on the expert's qualifications and comparing the medical problem and the type of treatment in the case to the experience and background of the expert, the trial court can evaluate whether the witness has demonstrated a sufficient familiarity with the standard of care practiced in the case. The foundational requirements provide the trial court with the information necessary to determine whether an expert has expertise in dealing with the plaintiff's medical problem and treatment. Whether the expert is qualified to testify is not dependent on whether he is a member of the same specialty or subspecialty as the defendant but, rather, whether the allegations of negligence concern matters within his knowledge and observation.

If the plaintiff fails to satisfy either of the foundational requirements of *Purtill*, the trial court must disallow the expert's testimony. (*Purtill*, 111 Ill. 2d at 244.) The requirements are a threshold beneath which the plaintiff cannot fall without failing to sustain the allegations of his complaint. They monitor the course the plaintiff's action will take, and are sufficiently comprehensive in alerting the trial court to the concerns relevant in determining the admissibility of the expert's testimony.

If the trial court determines that the expert is qualified, the defendant is then in the position to direct the jury's attention to any infirmities in his testimony or his competency to testify. Cross-examination, argument and jury instructions provide defense counsel with the opportunity and means to challenge the expert's qualifications as well as the opinion he offers. Restricting the qualification of experts to those physicians who are members of the same specialty or subspecialty as the defendant would only upset the balance necessary to an adversarial system without any compensating benefit. Accordingly, we reaffirm this court's position in *Purtill* without qualification.

In its order, the trial court stated that "there is substantial ground for difference of opinion on this issue based upon the conflict" in the appellate court among the opinions in *Petkus, Northern Trust* and *Thomas*. We disagree.

At the time of the opinions in *Petkus, Northern Trust* and *Thomas*, the law in Illinois as to the admissibility of expert testimony was that found in *Purtill*. A trial court's determination as to an expert's qualifications and competency to testify is not to be reversed on appeal unless the record indicated that the decision was an abuse of discretion. Although the trial court in this matter groups the opinions in *Petkus, Northern Trust* and

*Thomas* together as if they are all relevant to resolution of the certified question, it is only the opinion in *Northern Trust* where the trial court's determination as to the expert's qualifications and competency is on review.

In *Petkus v. Girzadus,* the earliest of the three decisions, the issue was whether the expert's deposition was sufficient to create an issue of fact in opposition to the defendant's motion for summary judgment. The court concluded that the plaintiff demonstrated an ability to offer, through a competent expert witness, evidence at trial on the applicable standard of care. *Petkus,* 177 Ill. App. 3d at 327, citing *Purtill,* 111 Ill. 2d 229.

The appellate court concluded that the plaintiff's expert was qualified to testify as to the minimum standards of general medical practice applicable to *any* physician rendering post-operative care to a cardiac patient and concluded that the facts demonstrated that the standard of practice of such a physician was within the scope of the plaintiff's expert. (*Petkus,* 177 Ill. App. 3d at 328-29.) The fact that the expert was a cardiologist and the defendant was an orthopedic surgeon was not relevant to the court's conclusion. What was relevant was the plaintiff's demonstrated ability to offer evidence sufficient to sustain his allegations and withstand the motion for summary judgment.

The *Petkus* court distinguished the issue before it from the entirely distinct one of whether the trial court's determination as to the expert's competency and qualifications as an expert was supported by the evidence. This latter issue, the *Petkus* court properly noted, was a determination lying "within the sound discretion of the trial court" and was not on review. *Petkus,* 177 Ill. App. 3d at 327.

It is this issue, however, that the courts in *Northern Trust* and *Thomas* consider. In *Northern Trust,* the plaintiff was treated with an intrauterine injection of

Prostin, an abortion-inducing drug. After the injection, she suffered cardiac arrest and brain damage resulting from a lack of oxygen. In her suit against the obstetrician, the hospital and the drug manufacturer, the plaintiff tendered a specialist in emergency medicine and internal medicine as her expert. The expert was not an obstetrician and had never performed abortions. He had never used Prostin, nor had he seen it used, and he had no familiarity with the side effects of the drug. The jury returned a general verdict in plaintiff's favor.

In his appeal, the physician "question[ed] the qualifications of the expert used by plaintiff to establish the applicable standard of care [and] the sufficiency of the evidence indicating that plaintiff's injury was proximately caused by his conduct." (*Northern Trust*, 213 Ill. App. 3d at 405.) The appellate court concluded that plaintiff's expert was not competent to testify on the standard of care to be applied to the defendant physician. The decision of the appellate court did not hinge upon whether Dr. Matthews was an obstetrician but, rather, whether he had any training and experience on the medical issue involved in the case.

In *Thomas,* the medical issue was the post-partum management of a mother's bleeding. A related issue was whether there was retained placental tissue in the uterus which may have been responsible for the post-partum bleeding. The legal issues on review were "whether the circuit court committed reversible error by directing the verdict and whether the jury's verdict in favor of the hospital was against the manifest weight of the evidence." *Thomas,* 221 Ill. App. 3d at 920.

The plaintiff's expert, Dr. Stewart, was a pediatrician whose last contact with obstetrics was in medical school and who had never treated post-partum bleeding in her medical practice. At the end of the plaintiff's case,

defendants moved for a directed verdict. The circuit court granted the motion as to the obstetrician only.

The appellate court upheld the grant of directed verdict, concluding both that Dr. Stewart was "not competent to testify on the standard of care to be applied to [the obstetrician]" (*Thomas*, 221 Ill. App. 3d at 925) and that the plaintiff failed to establish a *prima facie* case of negligent medical malpractice (*Thomas*, 221 Ill. App. 3d at 926).

The court in *Thomas* improperly reviewed the trial court's decision to allow Dr. Stewart to testify as an expert. The issue before the court was whether the motion for directed verdict had properly been granted, not whether the trial court had abused its discretion in allowing her testify as an expert in the plaintiff's case. (*Thomas*, 221 Ill. App. 3d 919.) In directing a verdict, the trial court determines as a matter of law that there are no evidentiary facts out of which the jury may construe the necessary fact essential to recovery.

In order for the plaintiff in *Thomas* to have withstood the motion for directed verdict, she had to have introduced evidence that the physician deviated from established procedures. The appellate court did not discuss the evidence as it related to this issue but, rather, reexamined Dr. Stewart's qualifications and concluded that she was not competent to testify. The court relied on the decision in *Northern Trust*, although the issues are different, and did not refer at all to the opinion in *Petkus*.

We believe the trial court misapprehended the conclusions reached in the opinions in *Thomas v. University of Chicago Lying-In Hospital*, *Northern Trust Co. v. Up-John Co.*, and *Petkus v. Girzadus*. For this reason, we do not agree with the trial court's statement that there is a "conflict in the Illinois appellate [court]" as to the law in determining the qualifications and competency of a witness to testify as an expert. We believe the trial

48.

courts in these matters correctly applied the law as contained in *Purtill v. Hess*. We answer the question certified by the trial court in this matter in the negative and in so doing, reaffirm this court's decisions in *Purtill v. Hess*.

The cause is remanded to the circuit court for further proceedings.

*Certified question answered;*
*cause remanded.*