(No. 74350.—)

ENOS GILL, Appellant, v. JAMES T. FOSTER, M.D., *et al.*, Appellees.

*Opinion filed November 18, 1993.—Rehearing denied January 31, 1994.*

HARRISON, J., joined by McMORROW, J., dissenting.

Harlan Heller, Maria Dunn and C. Steve Ferguson, of Heller, Holmes & Associates, P.C., of Mattoon, for appellant.

Randall A. Mead and David L. Drake, of Drake, Narup & Mead, P.C., of Springfield (Robert Marc Che-

mers, of Pretzel & Stouffer, Chtrd., of Chicago, of counsel), for appellee James T. Foster.

Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall and Bradley S. McMillan, of counsel), and Daniel R. Simmons, of Springfield, for appellee C.F. Aquino.

Nancy E. Martin and Richard J. Wilderson, of Graham & Graham, Ltd., of Springfield, for appellee St. John's Hospital.

Bruce Robert Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff, Enos Gill, entered St. John's Hospital in Springfield for evaluation and work-up for surgery to correct a chronic condition, reflux esophagitis. After surgery, as he was experiencing chest pain, plaintiff consulted his family physician, Dr. C.F. Aquino. Dr. Aquino subsequently hospitalized plaintiff in St. Francis Hospital in Litchfield.

While at St. Francis, plaintiff's condition apparently worsened. He experienced a sudden onset of extreme chest pain and low blood pressure. Further, a pathology report showed that food particles were trapped in plaintiff's chest.

Ultimately, plaintiff was transferred to Memorial Medical Center under the care of Dr. James David Rogers. Dr. Rogers obtained an upper gastrointestinal study which indicated that plaintiff's stomach was trapped in the chest. Dr. Rogers performed surgery on January 7, 1985. He made an abdominal incision and attempted to reduce the stomach back into the abdominal cavity but could not do so because of the amount of inflammation. This incision was then closed and plaintiff's chest was

opened. It was then discovered that a nasal gastric tube placed at St. Francis Hospital had punctured plaintiff's stomach and the leaking contents had established an infection and inflammatory process over the left lung, coating it with a sticky substance which had to be stripped. After this was done, the stomach was reduced into the abdominal cavity.

Plaintiff then brought this medical malpractice action against Doctors Farrell and McCormick, St. John's Hospital, Dr. Aquino, and Dr. James T. Foster, the radiologist at St. Francis in Litchfield. Plaintiff settled with Farrell and McCormick, the doctors who were responsible for his original surgery. As to the remaining parties, summary judgment was granted in favor of St. John's Hospital, and a verdict was directed in favor of Dr. Foster. While the jury found in favor of plaintiff against Dr. Aquino, it found that plaintiff's damages of $55,000 had to be reduced by 50% due to plaintiff's own negligence.

The appellate court affirmed. 232 Ill. App. 3d 768.

On appeal to this court, plaintiff raises the following issues: (1) whether the granting of summary judgment in favor of St. John's Hospital was error; (2) whether the trial court committed an abuse of discretion by refusing to admit bills from Memorial Hospital and the offer of proof concerning what the testimony of a hospital administrator would be as to the average cost of a hiatal hernia repair; (3) whether the jury's finding that plaintiff was negligent was against the manifest weight of the evidence; (4) whether the damages assessed by the jury against plaintiff's family doctor were inadequate and contrary to the manifest weight of the evidence; and (5) whether it was error for the trial court to refuse to allow one of plaintiff's experts, a surgeon, to testify concerning the standard of care pertaining to radiologists.

## SUMMARY JUDGMENT

Plaintiff entered St. John's Hospital in Springfield, under Dr. Raymond L. Farrell's care, for evaluation and work-up for surgery to correct plaintiff's reflux esophagitis (essentially a condition where there is backward flow of material from the stomach and an inflammation of the esophagus). Dr. Richard McCormick performed the surgery, a Nissen fundoplication, on December 19, 1984.

The doctor's progress notes indicated that on December 26, 1984, plaintiff complained of chest pain. Testimony indicates that Dr. McCormick thought that this pain was normal after this type of surgery and that perhaps plaintiff had pulled a muscle when he experienced vomiting.

On December 28, 1984, when plaintiff was discharged from St. John's Hospital, he complained to the discharge nurse of chest pain. The nurse, aware that plaintiff had complained of chest pain previously, examined him. According to plaintiff, the nurse, after listening to plaintiff's chest, stated that there was something wrong and advised him to go to his family doctor.

Count one of plaintiff's complaint was directed against defendant St. John's Hospital. In it, plaintiff alleged that the hospital deviated from the accepted standard of care by discharging plaintiff from the hospital even though plaintiff complained of chest pain, failing to inform the treating physician that plaintiff was complaining of chest pain at the time of discharge, and failing to communicate plaintiff's clinical findings to a nursing supervisor for appropriate care.

Defendant, St. John's Hospital, filed a motion for summary judgment denying the negligence of its agents and that such alleged negligence was the proximate

cause of plaintiff's injuries. The trial court granted summary judgment in favor of the hospital.

The appellate court affirmed. That court found that, while there may have been a material question of fact regarding whether a nurse's duty of care was breached, the discharge nurse's failure to relate plaintiff's complaint of chest pain to an attending physician was not the cause of plaintiff's injury because the doctor already knew of the pain.

On appeal to this court, plaintiff maintains that the omissions of the nursing staff at St. John's Hospital contributed to the delay in diagnosing the plaintiff's complications, resulting in a much more difficult and complicated operation. Plaintiff argues that the appellate court decision has the effect of requiring plaintiff to prove that defendant's negligence was more likely than not the cause of plaintiff's injuries at the summary judgment stage. Plaintiff contends that it was a jury question as to whether the nurse's omission contributed to, and was thus a proximate cause of plaintiff's injuries.

We cannot agree. A review of the evidence can only lead to the conclusion the appellate court reached. First, defendant Aquino's expert, Dr. Don Ramsey, testified that based on his review of the records he believed the herniation of the stomach into the chest occurred on December 24, 1984. It is uncontroverted, however, that the treating physician had repeated contacts with plaintiff after that date and failed to properly diagnose the problem. We note that Dr. McCormick examined plaintiff on December 26, 1984, and determined that the chest pain was a normal side effect of the surgery. Dr. McCormick received another report of plaintiff's pain on December 27, 1984. Finally, on December 28, 1984, the date of discharge, plaintiff reiterated to Dr. McCormick his continuing chest pain within three hours before discharge and Dr. McCormick chose not to examine plaintiff more thor-

oughly. In short, when plaintiff was discharged from St. John's Hospital, he was experiencing pain in his chest for which he was taking no medication, which was similar to that which he had been experiencing for several days prior to discharge, and which he had reported to his attending physician on the morning of discharge. In light of these facts, we must agree with the appellate court and find that even assuming the nurse had breached a duty to inform the treating physician of the patient's complaint, this breach did not proximately cause the delay in the correct diagnosis of the plaintiff's condition.

## ERRORS REGARDING DEFENDANT AQUINO

### A. The Medical Bills

Plaintiff raises several issues with regards to defendant Dr. Aquino. He first contends that the trial court abused its discretion in refusing to admit plaintiff's exhibits Nos. 1 and 6 as proof of damages against Dr. Aquino. Exhibit 1 is a bill from Memorial Medical Center for 23 days of hospitalization amounting to $19,625.98. Exhibit 6 is the bill of Dr. Rogers in the sum of $2,550.

The trial judge apparently excluded the two bills because the plaintiff made no effort to separate which charges on the bills would necessarily have been incurred as the natural result of a necessary repair surgery for a herniated stomach, and which, if any, were incurred as the result of something chargeable to defendant Dr. Aquino's negligence. In excluding exhibit 1 the court stated:

> "[O]n Plaintiff's Exhibit 1 there are literally hundreds of entries that the jury would have no basis, no ability to determine what would have happened if this man would never have gone to Litchfield, what of these expenses would have been incurred anyway.

* * *

. There has to be people throughout who are qualified to break these down, but absent any evidence on which this jury can do it, is not those twelve people sitting over there."

After the court denied admission of exhibit 1, plaintiff attempted to satisfy the court's foundational requirements by offering the testimony of Gregory Weller, vice president of finance at Memorial Medical Center. When questioned by the trial court as to whether or not Weller was going to break down the expenses set forth in exhibit 1, plaintiff's counsel replied in the negative and stated that he was only going to testify regarding the average cost of this type of procedure.

Defense counsel objected to the offer of testimony arguing that it did not detail what parts of that surgery were going to be necessary anyway and what parts were not. The trial court agreed and refused the testimony of Weller as a witness stating:

"[T]he difficulty that I continue to have is that if you've got in Plaintiff's Exhibit 1, a very, very detailed breakdown of every package, if you will, that was utilized in this man's treatment, that is—appears to be capable of being broken down and attributed to each type of surgery, and you never came forward with someone who would do that, and I'm not sure that the witness you're proposing today is intending to do that ***. *** [Y]ou don't have a situation where we are incapable of breaking it down. You have a situation that, to me, is very well-suited to breaking it down. You just haven't brought anybody in to do it."

Plaintiff argues that the trial court erred both in not admitting the two exhibits and by denying the offer of proof.

We do not agree. The admission of evidence is within the sound discretion of the trial court and a reviewing court will not reverse the trial court unless that discre-

tion was clearly abused. (*People v. Enis* (1990), 139 Ill. 2d 264.) Even relevant evidence may be excluded if its probative value is substantially outweighed by such factors as prejudice, confusion, or potential to mislead the jury. We cannot say that the trial court clearly abused its discretion in this case.

In proving damages, the burden is on the plaintiff to establish a reasonable basis for computing damages. The voluminous medical bills, however, did not establish a reasonable basis for computing damages. In fact, a reasonable court could have found that such an impressive bill could have confused or misled the jury as to the extent of damages caused by Dr. Aquino's alleged negligence. Similarly, Weller's offered testimony could not have aided in the reasonable apportionment of damages as he was incapable of determining what charge was for what service. We find that under this scenario, the trial court was within its discretion in denying the admission of the bills and the offered testimony.

## B. Plaintiff's Negligence

The next issue presented for review regarding Dr. Aquino concerns the jury verdict that plaintiff was also negligent. Plaintiff argues that this finding was against the manifest weight of the evidence.

Plaintiff's complaint brought against Dr. Aquino charged that Dr. Aquino was negligent in failing to return the plaintiff to the care of Dr. McCormick, was negligent in failing to return the plaintiff to the care of Dr. Farrell, and was negligent in failing to transfer plaintiff to another medical facility. Dr. Aquino filed an affirmative defense stating that the plaintiff was contributorily negligent in failing to follow his advice to return to Springfield for treatment and, in doing so, plaintiff contributed to the cause of his own injuries and damages.

The testimony at trial was conflicting. Plaintiff testified that when he first went to see Dr. Aquino on December 28, 1984, Dr. Aquino told plaintiff that he should be sent back to Springfield. Plaintiff testified that he stated that he did not care to go back to St. John's Hospital because he was not satisfied with the care he received there. Plaintiff contends that the next time any mention was made of transfer was on January 4, 1985, when Dr. Aquino told him that he was going to transfer him to Springfield to Memorial Medical Center. Plaintiff states that he told Dr. Aquino that the transfer to Memorial was fine.

Dr. Aquino testified that he told plaintiff right after examining him that plaintiff should go back to Springfield but that plaintiff was not receptive. Aquino further testified that after he admitted plaintiff to St. Francis Hospital in Litchfield, he discussed transfer with plaintiff on a daily basis between January 1 and January 4, 1985.

Under these facts, we agree with the appellate court and find that the jury could reasonably have found that plaintiff was negligent in refusing his physician's suggestion of returning to St. John's Hospital. We further conclude that the jury finding that this negligence contributed 50% to plaintiff's injuries not so unreasonable as to be against the manifest weight of the evidence.

## C. Adequacy of Plaintiff's Damages

Next, we address plaintiff's final claim regarding Dr. Aquino in that the damages awarded were inadequate and contrary to the evidence presented at trial.

The jury returned a verdict in favor of plaintiff against Dr. Aquino for $55,000 distributed in the following manner: $15,000 for past medical expenses, $10,000 for disability and disfigurement, $5,000 for past wages lost, $25,000 for past pain and suffering. Plaintiff contends that the jury disregarded evidence: of past

medical expenses which alone amounted to $24,230.02; of his need for future medical care; and of his past and future pain and suffering.

Reviewing courts will not interfere with the jury's assessment of damages unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401.) After a thorough analysis, the appellate court found that the jury could have reasonably reached the damage amount that it did. (232 Ill. App. 3d at 794-98.) We find plaintiff's arguments to the contrary unpersuasive and adopt the appellate court's conclusion as to this issue.

## EXPERT WITNESS

Plaintiff's final claim of error concerns the trial court's barring of his expert witness in his case against the radiologist at St. Francis, Dr. Foster. Plaintiff contends that the appellate court erred in upholding the trial court's bar of his expert witness. Plaintiff suggests that the appellate court opinion gives the trial court unbridled discretion in barring expert witnesses.

Upon plaintiff's admission to St. Francis Hospital, Dr. Aquino had X rays made of plaintiff's chest. Dr. Foster was the radiologist at St. Francis who read these initial films and all subsequent films taken during plaintiff's hospitalization there.

At trial, plaintiff offered the testimony of his expert, Dr. David McAfee, a board-certified general surgeon, regarding the care and deviations therefrom by Dr. Foster. He testified that during the course of his experience as a surgeon he: has had training and experience in interpreting X rays; has instructed medical students on the subject of radiology as it relates to surgery; has examined

tens of thousands of X rays; and is familiar with the standard of care of reasonably well-qualified radiologists.

Dr. Foster, through his attorney, objected to Dr. McAfee testifying as an expert in the area of radiology and the standard of care of radiologists, as he was not a radiologist. The trial court sustained this objection and subsequently directed a verdict in favor of Dr. Foster.

The appellate court affirmed. It found particularly relevant that Dr. McAfee testified that he himself relied upon the expertise of a radiologist in complicated matters.

On appeal to this court, plaintiff argues that because Dr. McAfee was licensed to practice medicine in all its branches, he was qualified to testify about the standard of care of radiologists, having testified that he was familiar with that standard. Plaintiff contends that the fact that Dr. McAfee was not a practicing radiologist, nor board certified in radiology goes only to the weight of his opinion, not the admissibility. We agree.

In *Jones v. O'Young* (1992), 154 Ill. 2d 39, this court held that a plaintiff's medical expert need not also specialize in the same area of medicine as the defendant doctor in order for the expert to qualify as to the appropriate standard of care. In so holding, this court reaffirmed the three-step analysis to be performed to determine an expert physician's qualifications and competency to testify announced in *Purtill v. Hess* (1986), 111 Ill. 2d 229. In *Purtill*, this court found:

(1) the expert must be a licensed member of the school of medicine about which he proposes to testify;

(2) the expert must prove his familiarity with other physicians' methods, procedures, and treatment; and

(3) once the above foundation is laid, the trial court has the discretion to determine whether the physician is qualified and competent to state his opinion regarding the standard of care. *Purtill*, 111 Ill. 2d at 243.

In Illinois, a physician is licensed to practice medicine in all its branches (Ill. Rev. Stat. 1991, ch. 111, par. 4400—1); thus, plaintiff's expert satisfies the first threshold requirement. The second threshold, familiarity with the methods and procedures, is also apparent.

Nonetheless, the trial court determined that plaintiff's expert was not qualified to state his opinion regarding a radiologist's standard of care in this case. In reaching its decision, the trial court elected to question Dr. McAfee directly on his qualifications. Under examination by the court, Dr. McAfee testified that, in the course of his work, he at times relied upon radiologists' interpretations of X rays if the case was complicated. The trial court found this admission particularly relevant and excluded Dr. McAfee's testimony as to radiologists' standard of care.

We find that the trial court abused its discretion. The fact that the witness would rely on a radiologist's opinion does not indicate that he lacks the qualifications to testify. The fact that Dr. McAfee relied on the opinion of radiologists in some cases goes only to the weight of his opinion, not to the admissibility of it. We note that even a physician specializing in radiology often relies on the opinion of other radiologists. Certainly, this fact alone would not prevent that physician from testifying as to radiologists' standard of care.

While we find the trial court abused its discretion in limiting the testimony of Dr. McAfee, we find no occasion to reverse the appellate court solely on this basis and remand this cause for a new trial. As noted above,

the jury's verdict was in the amount of $55,000 reduced by 50% to $27,000. Even if Dr. Foster had been found liable, his liability would be limited to $27,000, jointly and severally with Dr. Aquino. Prior to trial, however, plaintiff settled with two other physicians for a total of $35,000. As the plaintiff admits that Dr. Foster is entitled to a setoff, and the credit exceeds the amount of damages, any error concerning the case against Dr. Foster did not prejudice the ultimate result.

## CONCLUSION

As discussed above, we cannot conclude that the jury findings were against the manifest weight of the evidence. While we find that the trial court abused its discretion in excluding the expert testimony of Dr. McAfee, this error did not affect the final disposition of this case. Given the foregoing, the appellate court judgment is hereby affirmed.

*Affirmed.*

JUSTICE HARRISON, dissenting:

Plaintiff suffered from reflux esophagitis, which means that his esophagus was inflamed as a result of material backing up from his stomach. This gave him heartburn, so he went to St. John's for corrective surgery. He had the surgery, but nothing was corrected. Not only did the procedure fail to eliminate plaintiff's symptoms, it left him with the additional distress of vomiting and chest pains.

Plaintiff quickly realized that something was wrong, but his persistent complaints went unheeded. His surgeon merely attributed the chest pains to normal postoperative soreness. What both the surgeon and the hospital failed to recognize was that plaintiff's stomach was no longer where it was supposed to be. As a result of the surgery, it had moved up into his chest cavity and

become trapped, compromising the function of his left lung and making it impossible for him to breathe or eat normally.

Plaintiff entered St. John's essentially fit, if uncomfortable. After nine days there, he was left in a condition which, if uncorrected, would have resulted in his death. There was nothing subtle about these complications. Had the requisite follow-up been made, the source of the difficulty would have been readily discoverable and correctable. Yet, the hospital did nothing. When the surgeon authorized plaintiff's discharge, the hospital dutifully showed him to the door. As plaintiff was leaving, the discharge nurse did listen to his chest and discovered that something was, indeed, wrong. Yet, she took no remedial action. Her only advice was for plaintiff to see his own doctor when he returned home.

We have recently reiterated that a hospital owes a duty, independent of any relationship between physician and patient, to review and supervise the medical care administered to a patient. (*Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 518-20.) The violation of that duty here is manifest. As one of plaintiff's experts stated, if the nurse was concerned enough to advise plaintiff to consult his personal physician after discharge, she should have conveyed her concern to his personal physician or, at a minimum, to her immediate nursing supervisor, and she should have recorded her findings in plaintiff's medical records. This was more than common sense. It was proper medical protocol. Yet, none of it was done.

The majority nevertheless concludes that the hospital should be shielded from liability as a matter of law because the nurse's error did not proximately cause the injury plaintiff sustained as the result of the delay in the correct diagnosis of his condition. I disagree. The issue of whether a defendant's conduct was a proximate cause

of the plaintiff's injury is ordinarily a question for the jury. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 130.) It can be decided as a matter of law on a motion for summary judgment only when the facts are undisputed and are such that there can be no difference in the judgment of reasonable persons as to the inferences to be drawn from them. (*Benner v. Bell* (1992), 236 Ill. App. 3d 761, 766.) This is not such a case.

The reason hospitals require their nurses to record and report pathological findings about a patient is so that appropriate follow-up measures can be taken to aid the patient. By acting as she did here, the nurse eliminated the possibility that any such follow-up measures would be provided. Plaintiff was simply abandoned to fend for himself.

The majority attempts to discount the resulting harm by theorizing that any further attempt to bring attention to plaintiff's condition would have been unavailing because the surgeon, who had primary responsibility for plaintiff's care, had previously been inattentive to his complaints. I note, however, that until the discharge nurse's examination, no other health care professional had corroborated plaintiff's concerns about his condition. Had her findings been noted in the record and related to the surgeon, they may well have provided the impetus the surgeon needed to conduct a thorough examination and to reevaluate his diagnosis. Even if the surgeon had no particular respect for the nurse's opinions, enlightened self-interest would have dictated that he be more guarded against the possibility of a bad outcome. After all, it is one thing for a doctor to have to explain why he chose to disregard a patient's subjective complaints. It is considerably more difficult for him to justify having ignoring documented medical complications, especially where, as here, the doctor has previously opted not to examine the patient personally. Under these circum-

stances, it cannot be said that there was no triable issue of fact or that the right of the hospital was clear and free from doubt. Summary judgment in favor of the hospital was therefore improper (see *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358) and should be reversed.

The judgment of the circuit court should also be reversed to the extent that it held plaintiff contributorily negligent for having refused Dr. Aquino's suggestion to return to St. John's following his discharge. In order to prove contributory negligence, a defendant must show that the plaintiff failed to exercise that degree of care which a reasonably prudent person would have used for his or her own safety under like circumstances. (See *Johnson v. Abbott Laboratories, Inc.* (1992), 238 Ill. App. 3d 898, 907.) No such showing was made here.

By any fair standard, plaintiff's experience at St. John's was horrendous. He came because he was told he needed specialized medical treatment, but, as I have just discussed, the surgery only made his condition worse. Much worse. His subsequent complaints were ignored, and, in the end, he was abandoned by his care givers, even though the discharge nurse knew that he was still in need of medical attention. When one adds to this experience the fact that Dr. Aquino, himself, was guilty of further mismanaging plaintiff's care, as the jury found, it was scarcely imprudent for plaintiff to reject Aquino's recommendation that he go back to St. John's for follow-up care. To the contrary, plaintiff's refusal to return there was probably the first sensible decision made by anyone in this case.

My final point of disagreement with the majority concerns the trial court's refusal to allow the jury to consider plaintiff's exhibits 1 and 6 and the testimony of Gregory Weller. Exhibit 1 was the $19,625.98 bill incurred by plaintiff at Memorial Hospital, where plaintiff's complications were finally diagnosed and surgically

corrected, and exhibit 6 was the $2,550 fee charged by the surgeon who actually performed the procedure. This evidence was relevant to establish plaintiff's damages on his claim that because of Dr. Aquino's delay in properly diagnosing the complications plaintiff experienced as a result of his treatment at St. John's, the corrective surgery performed at Memorial was more complex than would otherwise have been necessary.

There is no dispute that plaintiff had proper medical testimony to support this theory of recovery. According to the surgeon from Memorial, earlier diagnosis of the condition would have enabled plaintiff to obtain relief through quick, repeat abdominal surgery and a four- or five-day hospital stay, instead of the open chest surgery and 23-day hospital stay that was ultimately necessary. The difference between what plaintiff ended up having to pay for this more elaborate second surgery and the lesser amount he would have incurred in the absence of the malpractice is a cognizable element of plaintiff's damage claim against Aquino. The evidence in dispute here was simply the means by which plaintiff hoped to quantify this loss for the jury. Exhibits 1 and 6 would have established the actual cost of the second surgery, while the testimony of Weller, who served as vice-president of finance at Memorial, would have shown the average cost of the simpler surgery that would have sufficed but for the intervening complications occasioned by Aquino's negligence.

The majority correctly observes that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. (See, *e.g., City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 186.) It never articulates, however, how this evidence could have been prejudicial or confusing or misleading to the jury on the question of how much of the plaintiff's addi-

tional medical costs were attributable to Aquino's misdiagnosis. To avoid overstating the amount of the costs chargeable to Aquino, the jury would have had to do no more than subtract Weller's estimates from the totals on exhibits 1 and 6.

The majority also attempts to justify its result by invoking the principle that "[i]n proving damages, the burden is on the plaintiff to establish a reasonable basis for computing damages." (157 Ill. 2d at 313.) While I am in full agreement with this rule of law, it has no application here. The rule is addressed to the sufficiency of the evidence necessary to support a jury's verdict. Before us is the quite different question of whether the evidence is admissible in the first instance. If there were deficiencies in how plaintiff sought to calculate his damages, Aquino could have brought this out in his arguments to the jury or in a challenge to the jury's verdict on appeal. They were not grounds to bar the evidence outright. Accordingly, I would hold that it was a clear abuse of discretion for the circuit court to have excluded exhibits 1 and 6 and the testimony of Weller. As to defendant Aquino, I would therefore reverse and remand for a new trial as to damages only.

In view of this holding, I would not reach the additional question of whether the jury's present damage award is inadequate. I would, however, also reverse and remand for a new trial as to plaintiff's claims against Dr. Foster. As the majority has correctly held, the trial court erred in limiting the testimony of Dr. McAfee, the expert called by plaintiff to establish Foster's deviations from the standard of care for radiologists. Because the setoff to which Foster was entitled by virtue of plaintiff's settlement with two other physicians exceeded the amount of the jury's verdict, after the verdict was reduced by plaintiff's contributory negligence, the majority found that this error did not prejudice the ultimate

result and therefore did not warrant reversal for a new trial. In light of my conclusions that plaintiff should not have been found contributorily negligent and that he is entitled to a new trial as to damages, this finding of no prejudice cannot be sustained, and a new trial should be ordered.

JUSTICE McMORROW joins in this dissent.