FIFTH DIVISION
April 20, 2007

No. 1-06-0067


| | | |
|---|---|---|
| SUZANNE K. ALM and SCOTT A. ALM, Individually | ) | Appeal from the |
| and as Special Co-Administrators of the Estate of Arika R. | ) | Circuit Court of |
| Alm, Deceased, | ) | Cook County |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | Honorable |
| | ) | Mary Mulhern, |
| LOYOLA UNIVERSITY MEDICAL CENTER, DIANE | ) | Judge Presiding. |
| DADO, ANA PAPPAS, MICHAEL HORN, M. | ) | |
| NEVORET, and LOYOLA UNIVERSITY PHYSICIAN | ) | |
| FOUNDATION, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |


JUSTICE GALLAGHER delivered the opinion of the court:

This is a medical malpractice action involving the death of a child, Arika R. Alm (Arika). Arika's parents are plaintiffs, Suzanne K. Alm and Scott A. Alm, who filed suit, individually and as special co-administrators of Arika's estate, against defendants, Loyola University Medical Center, Loyola University Physician Foundation, and four physicians – Diane Dado, Ana Pappas, Michael Horn, and M. Nevoret. Plaintiffs now appeal from the November 17, 2005, order of the circuit court of Cook County that granted defendants' motion *in limine* barring plaintiffs' liability expert from testifying to opinions regarding areas outside the scope of his expertise, specifically, the standard of care applicable to the defendant physicians or alleged deviations from the standard of care by the defendant physicians. Plaintiffs also appeal from the

1-06-0067

circuit court's subsequent December 23, 2005, order granting summary judgment in favor of defendants. We affirm.

BACKGROUND

Arika was born with a cleft lip and palate. On November 4, 1998, at the age of two months, she underwent surgical repair of her cleft lip at Loyola University Medical Center (Loyola).

During the surgery, it took four attempts to intubate Arika. The medical record contains comments that the difficult intubation was due to the change in the anatomy of the palate with a change to the airway angle and a suggestion to consider fiberoptic intubation for a future surgery. After the surgery, Arika was transferred to the pediatric floor for an overnight stay where a nurse documented that she was irritable. Arika was discharged the following day.

Following discharge, Arika was not under the care of any licensed physician. Mrs. Alm took Arika home, fed her and placed her in a baby swing. Sometime within the next hour and a half, Mrs. Alm received a visit from a neighbor. The women walked over to Arika and the neighbor commented on how great the surgery on Arika's lip looked. While they were looking at Arika, the women noticed that her color did not look right and was a gray white color. Paramedics were called and they took Arika by ambulance to Hoffman Estates Medical Center, where she died on November 5, 1998.

Plaintiffs filed suit on June 17, 2002, which was a refiling of an action that had been voluntarily dismissed on June 19, 2001. Plaintiffs alleged, *inter alia*, that defendants were negligent in failing to properly and timely monitor Arika while she was under their care; failing

2

to properly and timely monitor and timely document her condition, including her breathing and output of fluids; failing to properly and timely recognize, diagnose, and document that Arika suffered from pulmonary edema; failing to obtain a pulmonary consult or treat Arika's pulmonary edema; and prematurely discharging her with undiagnosed pulmonary edema.

On June 14, 2005, plaintiffs disclosed their retained opinion witness, Dr. James Bryant, a pathologist, and his opinions. Dr. Bryant's opinions included the following:

(1) Arika had a difficult intubation during the procedure at Loyola;

(2) at the time of death, Arika had a swollen tongue, edema of the airway, fluidity of the blood, and other pathology as noted in the autopsy;

(3) the cause of death was asphyxia following the procedure at Loyola;

(4) the pathological cause of the asphyxia was an obstructed airway from the swollen tongue, edema of the airway, and other pathology noted at the autopsy;

(5) the pathology of the swollen tongue, edema of the airway and other pathology noted at autopsy were directly related to the procedure at Loyola, including the difficult intubation;

(6) each defendant physician was negligent in allowing Arika to be discharged in the above pathological condition;

(7) each defendant physician treated Arika;

(8) the physicians' negligence was the proximate cause of Arika's death;

(9) Sudden Infant Death Syndrome was not the pathological cause of death;

(10) the pathology noted at autopsy resulted from the procedure at Loyola; the

1-06-0067

baby swing played no role in the cause of death; and

(11) Arika's overhydration was present at the time of her discharge, aggravated her

pathological condition at discharge, and contributed to her death.

Dr. Bryant's discovery deposition was taken on July 26, 2005.

Prior to jury selection, defendants filed several motions *in limine*. Defendants' motion *in limine* No. 3 sought an order prohibiting Dr. Bryant from testifying to matters beyond the scope of his expertise. On November 17, 2005, the trial court granted, *inter alia*, defendants' motion *in limine* No. 3. On December 23, 2005, the trial court granted defendants' motion for summary judgment. This timely appeal followed.

## STANDARD OF REVIEW

Our standard of review of a trial court's decision to grant or deny a *motion in limine* is the abuse of discretion standard. *Schmitz v. Binette*, 368 Ill. App. 3d 447, 452, 857 N.E.2d 846, 851 (2006). "A trial court abuses its discretion only if it 'act[s] arbitrarily without the employment of conscientious judgment, exceed[s] the bounds of reason and ignore[s] recognized principles of law *** or if no reasonable person would take the position adopted by the court.' [Citation.]" *Schmitz*, 368 Ill. App. 3d at 452, 857 N.E.2d at 851. The trial court is also vested with the discretion to determine the relevance and admissibility of evidence, including expert testimony. *Simich v. Edgewater Beach Apartments Corp.*, 368 Ill. App. 3d 394, 411, 857 N.E.2d 934, 947 (2006). A trial court's determination as to whether a person is qualified to testify as an expert witness will not be disturbed absent an abuse of that discretion. *Gill v. Foster*, 157 Ill. 2d 304, 317, 626 N.E.2d 190, 196 (1993). In determining whether there has been an abuse of discretion,

4

1-06-0067

this court does not substitute its judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely. *DiCosola v. Bowman*, 342 Ill. App. 3d 530, 536, 794 N.E.2d 875, 879 (2003). We review a trial court's decision to grant summary judgment under the *de novo* standard. *Jinkins v. Lee*, 337 Ill. App. 3d 403, 409, 785 N.E.2d 914, 920 (2003).

ANALYSIS

In *Purtill v. Hess*, the Illinois Supreme Court described the three-step analysis that a trial court follows in determining whether a medical expert should be allowed to testify. *Purtill v. Hess*, 111 Ill. 2d 229, 243, 489 N.E.2d 867, 872-73 (1986); see also *Jones v. O'Young*, 154 Ill. 2d 39, 43, 607 N.E.2d 224, 225-26 (1992) (same); *Gill v. Foster*, 157 Ill. 2d 304, 316-17, 626 N.E.2d 190, 196 (1994) (same); *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 114-15, 806 N.E.2d 645, 655 (2004) (same). This three-step analysis was later summarized by our supreme court as containing "two foundational requirements of licensure and familiarity, and [a] discretionary requirement of competency." *Sullivan v. Edward Hospital*, 209 Ill. 2d at 115, 806 N.E.2d at 655. Specifically, the analysis that a trial court performs to determine whether a medical expert is qualified involves the following the three steps:

(1) the expert must be a licensed member of the school of medicine about which the expert proposes to express an opinion;

(2) the expert must be familiar with the methods, procedures, and treatments ordinarily observed by other physicians; and

(3) the trial court has the discretion to determine whether the physician is qualified

5

and competent to state his opinion regarding the standard of care. See *Gill v. Foster*, 157 Ill. 2d at 316-17, 626 N.E.2d at 196, citing *Purtill v. Hess*, 111 Ill. 2d at 243, 489 N.E.2d at 872-73. Thus, the first two steps are foundational requirements and form a threshold determination. *Sullivan v. Edward Hospital*, 209 Ill. 2d at 115, 806 N.E.2d at 655. If this threshold determination is not met, the analysis ends and the trial court must disallow the expert's testimony. *Sullivan v. Edward Hospital*, 209 Ill. 2d at 115, 806 N.E.2d at 655. If, on the other hand, the foundation is laid, the trial court proceeds to the third step. In other words, even if the first two steps are met, the trial court has discretion to determine if the particular expert is competent to testify in the particular case before the court. This third step, the so-called "competency" requirement, has been explained as follows: "It is only after determining that both foundational requirements are satisfied that the court proceeds to evaluate whether the allegations of negligence concern matters within the expert's knowledge and observation." (Emphasis omitted.) *Sullivan v. Edward Hospital*, 209 Ill. 2d at 115, 806 N.E.2d at 655. Therefore, the third step involves the trial court exercising its discretion in deciding whether the expert witness is competent to testify to the particular medical problem involved in the allegations at issue, *i.e.*, "to the issues at hand." *Ruiz v. City of Chicago*, 366 Ill. App. 3d 947, 953, 852 N.E.2d 424, 429 (2006).

In the instant case, defendants do not dispute that the first foundational requirement was met and concede that Dr. Bryant is a licensed member of the school of medicine about which he proposed to express an opinion. Rather, in their motion *in limine* and in the present appeal, defendants contend that Dr. Bryant is not familiar with the methods, procedures, and treatments

ordinarily observed by other physicians, including the defendant physicians. We agree.

Dr. Bryant is a pathologist. The defendant doctors are plastic surgeons and an anesthesiologist. While it is true that a plaintiff's medical expert need not have the same specialty or subspecialty as the defendant doctors (*Jones v. O'Young*, 154 Ill. 2d at 43, 607 N.E.2d at 226), he must nonetheless be familiar with the methods, procedures, and treatments ordinarily observed by other physicians in the specialty about which he is testifying. In the instant case, the relevant methods, procedures, and treatments would involve postoperative care of children and discharge decision making. Those are not within Dr. Bryant's area of expertise. His training and experience involve examination of dead bodies and tissue samples from both the living and the dead. He has not evaluated a live patient since 1978. He has not had hospital privileges since 1985 and he has not treated a pediatric patient since the early 1970's. Additionally, by his own admission, Dr. Bryant does not consider himself to be an expert in plastic surgery, general surgery or anesthesia. Dr. Bryant testified that his only medical experience in the area of plastic surgery is that "he deals with [plastic surgeons] when they send [him] a specimen and ask [him] a lot of questions about what their next procedure should be." Similarly, Dr. Bryant has no medical training or experience in the area of anesthesiology. His only training in that area was as part of a rotation when he was a resident in 1973. Because the foundational requirement of familiarity has not been met, Dr. Bryant's testimony as an expert witness in the instant case must be disallowed.

Assuming *arguendo*, however, that Dr. Bryant did possess the requisite familiarity with the methods, procedures, and treatments ordinarily observed by other physicians, we cannot say

that the trial court abused its discretion in granting defendants' motion *in limine* to prohibit Dr. Bryant from testifying to matters beyond the scope of his expertise. The trial court found that Dr. Bryant was "not qualified and lack[ed] the expertise required to permit admissibility of his opinion testimony regarding the standard of care applicable to the defendants, or his opinions that any defendant deviated from the applicable standard of care."

At his deposition, Dr. Bryant could not recall ever discharging a patient from the hospital. He was unable to identify the standard of care for the discharge of a postoperative patient following cleft lip repair from a hospital or for the discharge of any patient following a plastic surgery procedure. We cannot say that the trial court abused its discretion in determining that Dr. Bryant was not competent to testify to the issues at hand.

Without the expert testimony of Dr. Bryant, plaintiffs would be unable to meet their burden of proving their malpractice claims. To prove a claim of medical malpractice a plaintiff must show that (1) there was a standard of care by which to measure the defendant's conduct, (2) the defendant negligently breached that standard of care, and (3) the defendant's breach was the proximate cause of the plaintiff's injury. *Hooper v. County of Cook*, 366 Ill. App. 3d 1, 7, 851 N.E.2d 663, 669 (2006). Each element must be presented by expert testimony. See *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 724 N.E.2d 115 (1999). Because plaintiffs could not establish the threshold element here without expert testimony, summary judgment was properly granted.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.