MARTIN SILVERSTEIN, Plaintiff-Appellant, v. VICTORIA BRANDER *et al.*, Defendants-Appellees (Mark Stolar *et al.*, Defendants).

First District (2nd Division)   No. 1—99—1521

Opinion filed June 20, 2000.—Rehearing denied December 6, 2000.—Modified and supplemental opinions filed December 11, 2000.

Ambrose & Cushing, P.C., of Chicago (F. John Cushing III and Marilyn Martin, of counsel), for appellant.

Rooks, Pitts & Poust, of Chicago (Thomas R. Hill and Christopher F. Dekker, of counsel), for appellee Victoria Brander.

Nancy E. Paridy and Patricia Sheahan, both of Chicago, for appellee Rehabilitation Institute of Chicago.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Martin Silverstein sued Dr. Victoria Brander and her employer, Rehabilitation Institute of Chicago (RIC), for medical malpractice. On the eve of trial the court disallowed plaintiff's expert. The court then found good cause to excuse compliance with court rules for summary judgment motions. Plaintiff appeals from the decision granting summary judgment in defendants' favor.

Plaintiff, who had a history of peptic ulcers, had hip replacement surgery on May 27, 1993. The orthopedic surgeon ordered the administration of Indocin following the operation. The hospital released plaintiff to RIC, where he came under the care of Dr. Brander, a physiatrist. Plaintiff complained of stomach pains and nausea. On June 7, 1993, RIC transferred him back to the hospital, and he had an operation to repair a new stomach ulcer.

On May 26, 1995, plaintiff filed this medical malpractice suit, naming as defendants Dr. Brander and RIC, along with his internist and the hospital where he had the hip surgery. He appended to his complaint a letter from Dr. Barry Singer, stating that, in his opinion, Dr. Brander's care for plaintiff fell below accepted medical standards because she should have recognized problems from the use of Indocin for a patient with a history of peptic ulcers complaining of nausea. The continued use of Indocin caused plaintiff's ulcer.

In his deposition Dr. Singer admitted that he was an internist, not a physiatrist. He had no criticism of Brander's work directing plaintiff's physical therapy; he criticized only the medical management of plaintiff. Dr. Singer worked on the medical management for more than 100 patients who had physical therapy at a rehabilitation hospital following hip replacement surgery. He also had considerable experience with Indocin, a gastric irritant that can cause ulceration. Dr. Singer agreed with the surgeon's order for Indocin following the operation because of the risk of bone ossification. But in his opinion, when plaintiff complained of nausea, the doctors responsible for his medical management should have discontinued the drug or they should have evaluated endoscopically the drug's effect; at the very least they needed to discuss the problem with the orthopedic surgeon. Dr. Brander did not take any of these courses of action. She permitted

continued administration of Indocin until plaintiff suffered the new ulcer.

The court set the case for trial April 20, 1999, and on that date the parties presented pretrial motions. The defense attorneys jointly moved to bar Dr. Singer from testifying that Dr. Brander, RIC, and a codefendant violated the standard of care or offering any other opinions against those defendants. The attorneys filed no written motion that day. The court took the motion under advisement.

On April 21, 1999, the day after the defense made the motion in court but the day before its filing, plaintiff filed a written response and the judge ruled on the motion. The judge said:

"[T]he issue is [whether Dr. Singer is] qualified to give an expert opinion on the standard of care with respect to physiatrists, and my reading of that deposition indicates to me that he isn't."

RIC immediately made an oral motion for summary judgment. The judge insisted on a written motion. Following plaintiff's further arguments, the judge explained that Dr. Singer's testimony showed he lacked sufficient familiarity with the standard of care for physiatrists. The judge read into the record the portion of the deposition that he took to establish the lack of familiarity:

"Q. Is it your opinion that a physical medicine and rehabilitation physician would have the same level of knowledge as a physician who specializes in internal medicine, with regard to the use of Indocin, its contraindications, and the use of H2 blockers?

A. Probably the use of Indocin they would be familiar with, because a lot of times they prescribe those drugs.

H2 blockers, maybe not as much as an internist.

Certainly they're used to treating patients with pain; and I think their knowledge and use of the drug Indocin is probably as good as any internist.

And through experience they probably develop some feel of the use of H2 blockers, because a lot of their patients may have to go on them if they're on Indocin or other drugs.

But certainly their overall knowledge wouldn't be as great as an internist; but I would suspect that they would have a sophisticated knowledge."

The court commented:

"[T]hat's not a reasonable degree of medical certainty. I don't know how many times he said probably, but a lot of probablies and a suspicion, and that's not enough for me ***. I think he disqualified himself."

RIC and Dr. Brander brought their written motion for judgment the next day. Plaintiff asked for the time to respond provided in the court rules. The court denied the request, setting hearing on the sum-

mary judgment motion for 9:30 a.m. on April 23, 1999, less than one day after RIC presented the written motion. Plaintiff objected to the lack of proper notice in accord with the rules. He moved to voluntarily dismiss his suit.

RIC and Dr. Brander argued that the court should find good cause for noncompliance with the rules. The attorney for their codefendant said that "for [his] own strategic reasons," he presented the motion as a motion *in limine*. The defense formally converted the motion to one for summary judgment only after the favorable ruling. The court found good cause for the failure to comply with the rules for summary judgment, and the court elected to hear the dispositive motion first. Due to the lack of admissible expert testimony, the court granted RIC and Dr. Brander summary judgment. The court then granted plaintiff voluntary dismissal of his suit against the other defendants. On RIC's motion, the court added that it found no just cause to delay enforcement or appeal from the judgment in favor of RIC and Dr. Brander. Plaintiff filed this timely appeal.

Plaintiff contends that the trial court erred by granting the summary judgment without proper notice. RIC cites *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 724 N.E.2d 115 (1999), as authority supporting its procedure. The plaintiff in *Seef* charged the hospital with six separate acts of negligence. The defendant moved *in limine* to bar plaintiff's expert from testifying as to three of the alleged acts. The trial court found all of the expert's testimony too speculative and completely barred him from testifying. At the court's suggestion, the defendant moved to dismiss and the court granted the motion because the plaintiff could not prove any of the alleged negligence proximately caused the injury. The first division of the First District Appellate Court affirmed. The court first suggested, in *dicta*, that the dismissal for lack of evidence on one of the elements of the cause of action was not in effect a grant of summary judgment. But the court retreated from that position and instead relied on a finding that, even if the procedure violated court rules for summary judgment motions, no injustice resulted. We note that, in that case, the defendant's motion *in limine* did not in effect present grounds for judgment, as it addressed the testimony pertaining to only half of the allegations of negligence. The trial court on its own broadened the effect of the motion and solicited the motion for judgment.

The first division of the First District Appellate Court more recently had the opportunity to reconsider the *dicta* and the effect of court rules in *Peterson v. Randhava*, 313 Ill. App. 3d 1, 729 N.E.2d 75 (2000). There the defendant presented a motion captioned as a request for sanctions under Supreme Court Rule 137 (155 Ill. 2d R. 137). The

trial court found that the motion in effect presented grounds for summary judgment on the complaint, so the court treated it as such. The court awarded the defendant judgment. On appeal this court first agreed with the trial court that the substance of a motion, not its title, determines how the court should treat it. *Peterson*, 313 Ill. App. 3d at 9; see *J.D. Marshall International, Inc. v. First National Bank*, 272 Ill. App. 3d 883, 888, 651 N.E.2d 518 (1995). The court then noted that the trial court failed to require compliance with its rules:

> "Rule 2.1(e) [of the circuit court of Cook County] states: 'Summary judgment—A motion for summary judgment shall not be heard until ten (10) days after service of the notice of motion \*\*\*.' Cook Co. Cir. Ct. R. 2.1(e) (eff. July 1, 1976). The Cook County Circuit Court Rules of Practice clearly provide for adequate notice to be given to a party before that party is called upon to defend against a motion for summary judgment. The rules of the court have ' "the force of a statute and [are] binding upon the parties, as well as the court." ' [Citations.]
> \*\*\*
> Section 2—1005 of the Code of Civil Procedure \*\*\* allows the nonmoving party time to respond to the summary judgment motion. 735 ILCS 5/2—1005 (West 1998). Equally important are the basic principles of our system that a party receive notice and an opportunity to respond to a potentially dispositive motion. Such opportunity 'is deeply imbedded in our concept of fair play and justice.' [Citation.] \*\*\* [The court's procedure] deprives the plaintiff of an opportunity to conduct discovery on the relevant issues, present evidence and argue against dismissal." *Peterson*, 313 Ill. App. 3d at 11-12.

Insofar as the two opinions appear somewhat inconsistent, we will follow the more recent and better reasoned decision in *Peterson* and not the part of *Seef* on which RIC relies.

■ Here, RIC and Dr. Brander misleadingly presented a potentially dispositive motion as a motion *in limine*. Defendants provided no notice and actually filed the written motion *in limine* after the trial court made the dispositive ruling. When the court granted the motion *in limine* defendants immediately moved for summary judgment, without any prior notice. The procedure shows that defendants used the *in limine* procedure solely to avoid the requirements for dispositive motions, although they knew the motion was, in effect, a summary judgment motion.

The trial court found good cause for the failure of RIC and Dr. Brander to comply with notice rules. Courts have discretion to excuse compliance with their rules for good cause. *Bright v. Dicke*, 166 Ill. 2d 204, 208-09, 652 N.E.2d 275 (1995). However, the court must exercise

that discretion to further the ends of justice. *Olympic Federal v. Witney Development Co.*, 113 Ill. App. 3d 981, 988, 447 N.E.2d 1371 (1983). Inadvertence or mistake does not constitute good cause, even in the absence of prejudice to other parties. *Greene v. City of Chicago*, 73 Ill. 2d 100, 107-08, 382 N.E.2d 1205 (1978). Defendants' mistitling of their dispositive motion could not excuse compliance with rules for summary judgment motions even had the mistitling resulted from an inadvertent error. Here, where an attorney arguing for the motion admitted using *in limine* procedures for strategic purposes, apparently to avoid the notice requirements for summary judgment motions, the conduct is much less excusable. The court's decision defeated the interests of justice in providing adequate time for responses to dispositive motions. The trial court abused its discretion by finding good cause for failure to comply with the procedural requirements for summary judgment motions. Accordingly, we must reverse the decision to grant summary judgment for RIC and Dr. Brander.

■ On remand the question of the admissibility of Dr. Singer's testimony against RIC and Dr. Brander is likely to arise again. To demonstrate that a licensed doctor has the qualifications to testify as an expert in a medical malpractice case, the plaintiff must show that the doctor:

> "has expertise in dealing with the plaintiff's medical problem and treatment. Whether the expert is qualified to testify is not dependent on whether he is a member of the same specialty or subspecialty as the defendant but, rather, whether the allegations of negligence concern matters within his knowledge and observation." *Jones v. O'Young*, 154 Ill. 2d 39, 43, 607 N.E.2d 224 (1992).

In *Rock v. Pickleman*, 214 Ill. App. 3d 368, 574 N.E.2d 682 (1991), the trial court found an internist unqualified to testify as an expert against a surgeon. The internist criticized the surgeon for ordering multiple enemas during the plaintiff's postoperative recovery. The appellate court reversed summary judgment for the defendant, holding:

> "[P]laintiff offered *** an internist[ ] to testify about a nonsurgical procedure. *** Because the care of an infection, like plaintiff's, is not exclusively within the domain of surgery, a pathologist or internist may be sufficiently qualified to testify on the issue." *Rock*, 214 Ill. App. 3d at 374.

Similarly, in *Rosenberg v. Miller*, 247 Ill. App. 3d 1023, 617 N.E.2d 493 (1993), the trial court found a dentist unqualified to testify against a periodontist. The dentist testified that the periodontist failed to read an X ray properly, and the failure caused a delay in the urgently needed referral to an oral surgeon for removal of an impacted wisdom tooth. The dentist said that all dentists, including periodontists, must learn

to read X rays and make proper referrals to other specialists on the basis of the readings. Again, the appellate court reversed summary judgment for the defendant, because the relevant standard related to general dental practice, including the reading of X rays. The dentist did not criticize the periodontal treatment. *Rosenberg*, 247 Ill. App. 3d at 1030-31.

In *Northern Trust Co. v. Upjohn Co.*, 213 Ill. App. 3d 390, 572 N.E.2d 1030 (1991), an obstetrician administered Prostin to the plaintiff to induce an abortion. The plaintiff's blood pressure rose sharply, and she suffered nausea and an irregular pulse. The obstetrician assessed these as mild reactions to the Prostin, and he instructed nurses to continue monitoring her. A half hour later the plaintiff suffered cardiac arrest. The plaintiff presented a specialist in emergency medicine as her expert. The specialist criticized the obstetrician's assessment of the plaintiff. But he had never induced an abortion, and he "had never used the drug Prostin, had never seen it used and never observed the reactions of a patient receiving the drug. In fact, he had never had any experience with the drug in any manner ***." *Upjohn*, 213 Ill. App. 3d at 406-07. The appellate court reversed judgment in favor of the plaintiff, finding that plaintiff's expert lacked competence to criticize the defendant's assessment of the severity and significance of responses to Prostin administered to induce an abortion.

The cases instruct us to look to the expert's precise testimony and determine whether he qualifies as an expert in the kind of treatment criticized. *Hubbard v. Sherman Hospital*, 292 Ill. App. 3d 148, 685 N.E.2d 648 (1997), provides a guiding example. There the court precluded the expert, who was not a surgeon, from criticizing the timing of presurgical tests and the surgery because he had not performed any such surgeries. But the court permitted the expert to criticize postsurgical care and the prescription of drugs during the initial emergency room visit. The appellate court affirmed, noting the appropriate restriction of the criticisms to matters within the witness' expertise.

■ Here Dr. Singer did not criticize Dr. Brander's work on plaintiff's physical therapy. He directed his criticism strictly to the medical management of the plaintiff. Licensed physicians remain responsible for medical management of their patients, at least to the extent of referring them to qualified specialists. Dr. Singer had worked on the medical management of more than 100 of his patients while they underwent physical rehabilitation following hip replacement surgery. He had considerable experience with Indocin, and he testified that all physicians, including physiatrists, know of Indocin's effects and should recognize that a patient with a history of peptic ulcers is

especially vulnerable to those effects. Therefore, he criticized Dr. Brander for continuing the Indocin after the side effects became manifest, and he said at the very least she had a duty to discuss the problem with plaintiff's orthopedic surgeon.

The trial court found Dr. Singer unqualified to present this testimony because he never worked as a physiatrist and because he used many terms in his deposition showing he answered certain questions to less than a reasonable degree of medical certainty. The court read one response into the record. The defense attorney asked Dr. Singer whether a physiatrist "would have the same level of knowledge as [an internist] with regard to the use of Indocin." On this issue Dr. Singer indicated uncertainty; physiatrists generally might be more aware than internists of some aspects of Indocin use, and they might be less aware than internists of other aspects. But Dr. Singer expressed no hesitation or uncertainty as to whether any physician responsible for the medical management of a postoperative patient should have brought to the attention of the surgeon the severe illness plaintiff experienced as a side effect of medicine the surgeon prescribed. We agree with the trial court that Dr. Singer should not testify concerning the comparison between a physiatrist's knowledge of Indocin and an internist's knowledge of Indocin. But for standards governing the medical management of postoperative patients, Dr. Singer demonstrated adequate expertise.

The trial court erred by permitting RIC and Dr. Brander to present a motion that effectively sought summary judgment without proper notice under the court rules. On remand the court should permit Dr. Singer to testify against RIC and Dr. Brander as to the violation of their duties with regard to the medical management of plaintiff during his rehabilitation.

Reversed and remanded.

McBRIDE and GORDON, JJ., concur.

### SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Following the filing of our opinion in this case on June 20, 2000, RIC and Brander petitioned for rehearing, and they subsequently filed a document entitled "Joint Petition for Withdrawal of Opinion or in the Alternative for Correction of Opinion and Dismissal of Appeal"

(Joint Petition). Although RIC and Brander claimed in the motion that plaintiff and his attorneys joined the motion, only defense counsel signed it. On September 13, 2000, we informed the parties that we would consider the joint motion upon presentation of a proper request, signed by both parties, by September 27, 2000.

John Cushing, plaintiff's attorney, filed an affidavit dated September 27, 2000, in which he swore that he did not consent to the withdrawal of the opinion, he did not receive a copy of the Joint Petition, and he first learned of the Joint Petition when his office received this court's order of September 13, 2000.

RIC and Brander moved for an extension of time to file a motion signed by both parties. We continued the motion for extension of time, and we ordered defense counsel to respond to Cushing's affidavit by October 19, 2000. On October 6, 2000, the parties filed a joint motion to withdraw the opinion in light of a settlement the parties concluded some time after RIC and Brander filed their original Joint Petition. We reminded defense counsel of the need for a response to Cushing's affidavit.

On November 1, 2000, defense counsel Thomas Hill filed an affidavit contradicting Cushing's affidavit.

Because the parties have presented a joint motion reflecting settlement of the case, we will now consider the petition for withdrawal of the opinion.

■ "A case can become moot when, pending the decision on appeal, events occur which render it impossible for the reviewing court to grant effectual relief to either party. [Citations.] A reviewing court can, of course, take judicial notice of such events or facts which, while not appearing in the record, disclose that an actual controversy no longer exists between the adverse parties." *Bluthardt v. Breslin*, 74 Ill. 2d 246, 250, 384 N.E.2d 1309 (1979). Once the parties have settled a case, the court generally cannot grant effective relief. Therefore, settlement of a case before issuance of the court's decision on appeal generally renders the appeal moot. See *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116-17, 601 N.E.2d 704 (1992).

■ But the parties here did not settle the case pending our decision on the appeal. When we filed our opinion, the parties had an actual controversy concerning the issues we addressed. We granted relief, and the subsequent settlement, reached 3½ months following the filing of our opinion, only finalized the effect of that relief. When the parties reached their settlement, only the petition for rehearing was properly before us. The settlement may affect the petition for rehearing, but it cannot render the original appeal moot.

The parties have presented no applicable precedent supporting the

request for withdrawal of the opinion. Accordingly, the request is denied.

■ In the interest of maintaining a sound body of precedent, we address the issues raised in the petition for rehearing. See *Chicago City Day School v. City of Chicago*, 289 Ill. App. 3d 55, 58-59, 681 N.E.2d 126 (1997). RIC and Brander claim that the record on appeal does not accurately reflect the date on which they filed the motion *in limine*, and they contest other particular factual assertions in the opinion. We have restated some of the opinion to reflect more accurately the precise facts shown by the record.

■ RIC and Brander also argue that our opinion shows a conflict between section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1998)) and Rule 2.1(e) of the circuit court of Cook County (Cook Co. Cir. Ct. R. 2.1(e) (eff. July 1, 1976)). We disagree. The general permission to file motions for summary judgment does not prevent the court from creating appropriate rules, including timing rules, for presentation of such motions. See *Savage v. Mui Pho*, 312 Ill. App. 3d 553, 557, 727 N.E.2d 1052 (2000); *In re Marriage of Jackson*, 259 Ill. App. 3d 538, 543, 631 N.E.2d 848 (1994). A party's preference for raising an effectively dispositive issue in a motion *in limine* does not constitute good cause for belated presentation of the dispositive motion. We deny the petition for rehearing.

McBRIDE and GORDON, JJ., concur.