MICHELLE LONG, Special Adm'x of the Estate of Kylee Bivens, Deceased, Plaintiff-Appellant, v. A.O. MATHEW *et al.*, Defendants (Robert L. Hall *et al.*, Respondents in Discovery-Appellees).

Fourth District   No. 4—02—0391

Argued November 19, 2002.—Opinion filed January 24, 2003.

Jill M. Webb (argued), of Costello & McMahon, Ltd., of Chicago, for appellant.

Stephen R. Swofford (argued) and Paul C. Estes, both of Hinshaw & Culbertson, of Chicago, for appellee Gregory A. Francken.

Babette L. Brennan (argued), of Brennan & Brennan, of Quincy, for appellee Richard Saalborn.

Delmer R. Mitchell and Gena J. Awerkamp (argued), both of Schmiedeskamp, Robertson, Neu & Mitchell, of Quincy, for appellee Robert L. Hall.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Michelle Long, brought a motion to convert respondents in discovery into defendants pursuant to section 2—402 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—402 (West 2000)). The trial court denied plaintiff's motion, ruling section 2—402 required plaintiff to engage in discovery during the six-month extension of the

statute of limitations and use the newly discovered evidence to convert respondents in discovery into defendants. Plaintiff appeals, arguing neither the language of the statute nor the case law requires plaintiff to engage in discovery before making a motion to convert. 735 ILCS 5/2—402 (West 2000). Further, plaintiff asserts the court incorrectly based its decision on a running of the statute of limitations since section 2—402 specifically allows respondents in discovery to be named as defendants after the statute of limitations period has run. 735 ILCS 5/2—402 (West 2000). We reverse.

## I. BACKGROUND

On October 18, 1999, Kylee Bivens, an eight-year-old female with a history of autism and seizure disorder, was evaluated in the emergency department of Blessing Hospital located in Quincy, Illinois. Kylee was examined by Richard A. Saalborn, D.O. (Doctor of Osteopathy), for complaints of vomiting, abdominal pain, and lethargy. The vomiting was described as "coffee-ground like," indicating the blood was from the gastrointestinal tract. A physical exam determined Kylee was dehydrated and lethargic; an abdominal exam showed mild distension (swelling or enlargement due to internal pressure).

Later that day, X rays were ordered. The X rays were interpreted by Gregory A. Francken, M.D., and Dr. Francken's interpretations were transcribed. Dr. Francken's observations indicated the X rays showed a 2.5-centimeter rounded, well-circumscribed object with a soft-tissue density overlying the lower abdomen and pelvis. Dr. Francken's analysis was not noted by any of the clinicians who later treated Kylee, and it is disputed when Dr. Francken's report reached Kylee's file.

Kylee was then admitted to the pediatric unit, cared for by A.O. Mathew, M.D., and treated for abdominal pain with leukocytosis (an increase in the number of white blood cells) and dehydration. Later in the evening, Dr. Mathew reexamined Kylee and noted blood in her vomit as well as continued dehydration. Eventually Kylee developed septic (toxic) shock. Resuscitation was performed and a consultation obtained from Robert L. Hall, M.D., a general surgeon, and assistant Rebecca S. Wolfer, M.D.

Drs. Hall and Wolfer suggested an operation be performed. Kylee underwent an exploratory laparotomy (surgical removal of a section of the abdominal wall), a small bowel decompression, an appendectomy (surgical removal of the appendix), and an intra-abdominal lavage (therapeutic washing out of an organ). Following the operation, a chest X ray revealed a "significant white out on the right chest" and a bronchoscopy (procedure where a tubular illuminated instrument

inspects the bronchial tubes) was performed by Dr. Wolfer and Larry Minnick, M.D. Kylee was transferred to the pediatric intensive-care unit and continued to receive resuscitation.

The following morning, a St. Louis Children's Hospital transport team arrived and attempted to bag-valve ventilate Kylee; Kylee went into cardiac arrest from which she was resuscitated. Later, Kylee went into cardiac arrest a second time, from which she did not recover. Kylee was pronounced dead on October 19, 1999, at 7:48 a.m.

An autopsy was performed and revealed mechanical injury to the alimentary tract (tubular passage from mouth to anus) from the swallowing of a rubber ball. There was also extensive inflammation and necrosis (the localized death of living tissue) of the esophagus and jejunum (a section of the small intestine). During the autopsy, a ball, 2.5 centimeters in diameter, was recovered from the colon.

On October 15, 2001, a complaint was filed pursuant to sections 13—212, 2—402, and 2—622 of the Code by plaintiff, as the mother and special administratrix of the estate of Kylee Bivens. 735 ILCS 5/13—212, 2—402, 2—622 (West 2000). The complaint named Dr. Mathew, Dr. Mathew's corporation, and Blessing Hospital as defendants, and Dr. Hall, Dr. Saalborn, and Dr. Francken as respondents in discovery. The complaint alleged those named (1) failed to properly diagnose and treat Kylee, (2) failed to obtain a surgical consultant in an expeditious fashion, (3) failed to consult the radiologist, (4) failed to review X rays taken of Kylee, and (5) failed to properly monitor Kylee's condition and communicate that information to the treating physicians. Plaintiff's attorney signed an affidavit stating (1) damages were sought for injuries caused by medical malpractice, and (2) a health-care professional had advised there was a meritorious cause of action. An unsigned report by an unnamed physician accompanied the complaint and detailed facts concerning Kylee's admittance to the hospital, her treatment, and the liability of Blessing Hospital and Dr. Mathew. The physician's report was based on (1) records from Blessing Hospital, (2) the autopsy report, and (3) radiographs (X rays).

On November 8, 2001, Dr. Mathew filed a motion to dismiss; on November 21, 2000, Blessing Hospital filed a motion to dismiss; and on December 4, 2000, Dr. Mathew adopted Blessing Hospital's motion to dismiss. Blessing Hospital's motion contended plaintiff failed to comply with section 2—622 of the Code in that the affidavit of the attorney failed to state (1) whether the physician writing the medical report had practiced within the last six years in the same area of medicine as the defendants, and (2) whether the physician had the requisite education and experience. 735 ILCS 5/2—622 (West 2000). Further, the motion faulted the physician's report for not indicating

the name and address of the physician or where he was licensed. On December 17, 2000, the trial court granted the motion and gave plaintiff 28 days to amend the complaint.

On January 22, 2002, plaintiff filed an amended complaint, accompanied by the affidavit of the plaintiff's attorney and a physician's report from Bernard Lerner, M.D. The physician's report was identical to the one attached to the first complaint except it was signed. On February 7, 2002, defendants answered with a motion to dismiss, alleging Dr. Lerner's medical license had been revoked in Illinois for unlawful possession of a controlled substance. Further, although Dr. Lerner indicated on his curriculum vitae he was licensed to practice medicine in New Mexico and Georgia, according to the New Mexico Board of Medical Examiners, his license had been suspended in that state, and according to the Georgia Board of Medical Examiners, he had no license. On February 22, 2002, Blessing Hospital made a motion for summary judgment; and on February 25, 2002, the trial court granted the motion and gave plaintiff until March 8 to file a second-amended complaint.

On March 11, 2002, plaintiff filed a reply to defendant's motion to dismiss and filed a motion to convert respondents in discovery to defendants. This motion was accompanied by an attorney's affidavit and by the medical report of Alan M. Nager, M.D. Dr. Nager's physician's report relied on (1) records from Blessing Hospital, (2) the autopsy examination report, and (3) radiographic films. Also on March 11, 2002, arguments were scheduled on the motion to convert (735 ILCS 5/2—402 (West 2000)).

On March 25, 2002, Dr. Hall filed a motion in objection to plaintiff's motion to convert, alleging that although section 2—402 affords plaintiffs a six-month grace period to deduce evidence in discovery as to whether a respondent should be named a defendant, in this case plaintiff conducted no discovery after the expiration of the two-year statute of limitations *on October 19, 2001*. Therefore, plaintiff should not be allowed to take advantage of the six-month extension afforded by section 2—402. Dr. Hall's second argument concerned the fact Dr. Nager was not a surgeon and did not have the requisite education and experience to comment on the duty owed by Dr. Hall. On that same date, Dr. Saalborn filed a response to plaintiff's motion to convert, making an argument similar to Dr. Hall's first argument. On March 26, 2002, Dr. Francken objected to plaintiff's motion to convert, arguing Dr. Hall's first and second arguments.

On April 8, 2002, a hearing was held on plaintiff's motion to convert. At the hearing, plaintiff and respondents in discovery primarily argued whether section 2—402 required plaintiff to have

conducted discovery before converting respondents in discovery into defendants. Although plaintiff asserted the X-ray films analyzed by Dr. Nager for his report were received during the six-month section 2—402 extended discovery period, attorneys for respondents in discovery highlighted the affidavit of Dr. Lerner indicated he used the X rays in his physician's report. Therefore, since Dr. Lerner's report was filed with the initial complaint, the X rays were received before the two-year statute of limitations period had run.

Based on the briefs and arguments at the hearing, the trial court determined "it is clear *** nothing took place in the six-month period *** in order to gain additional information on which plaintiff now bases [her] motion to convert." Further, since plaintiff had the information required to name respondents in discovery as defendants *before* the initial statute of limitations period had run, plaintiff had not used section 2—402 as intended. The court stated it had given plaintiff the opportunity to pursue litigation multiple times and was opposed to disposing of cases for highly technical procedural errors; however, the court went on to surmise the statute of limitations was not hypertechnical and could not be ignored. The court denied plaintiff's motion to convert and entered a Rule 304(a) finding (155 Ill. 2d R. 304(a)). This appeal followed.

## II. ANALYSIS

On appeal, plaintiff generally argues the trial court should have allowed her to convert Drs. Hall, Saalborn, and Francken from respondents in discovery into defendants. Specifically, plaintiff contends: (1) the trial court abused its discretion, (2) plaintiff did not unfairly extend the statute of limitations, and (3) plaintiff's section 2—622 physician's report was sufficient to convert all respondents in discovery into defendants.

### A. Trial Court Abused Its Discretion

■ The standard of review on the denial of a section 2—402 motion to convert a respondent in discovery into a defendant is whether the trial court abused its discretion. *Froehlich v. Sheehan*, 240 Ill. App. 3d 93, 103, 608 N.E.2d 889, 896 (1992); see also *Ingle v. Hospital Sisters Health System*, 141 Ill. App. 3d 1057, 1065, 491 N.E.2d 139, 144 (1986) (deference must be given to the trial court's findings). " 'Abuse of discretion' means clearly against logic; the question is not whether the appellate court agrees with the circuit court, but whether the circuit court acted arbitrarily, without employing conscientious judgment, or whether, in view of all the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *State Farm Fire &*

*Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083, 732 N.E.2d 1094, 1096 (2000).

■ Generally, section 13—212 of the Code sets forth the statute of limitations in a medical malpractice case and provides a cause of action must be brought within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the injury or death for which damages are sought. 735 ILCS 5/13—212 (West 2000). In some instances, application of the statute is harsh; however, section 2—402 acknowledges there may be times when a plaintiff does not have access to information that will help determine who is responsible for her damage. 735 ILCS 5/2—402 (West 2000). This statute allows a plaintiff to name an individual who has information concerning the damage as a respondent in discovery. Plaintiff may later convert the respondent in discovery into a defendant upon a showing of probable cause, so long as such is done within six months of naming the respondent in discovery.

Section 2—402 of the Code provides in pertinent part:

> "The plaintiff in any civil action may designate as respondents in discovery in his or her pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action. ***
>
> Persons or entities so named as respondents in discovery shall be required to respond to discovery by the plaintiff in the same manner as are defendants and may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action.
>
> * * *
>
> A person or entity named as a respondent in discovery in any civil action may be made a defendant in the same action at any time within [six] months after being named as a respondent in discovery, even though the time during which an action may otherwise be initiated against him or her may have expired during such [six-]month period. No extensions of this [six-]month period shall be permitted unless the plaintiff can show a failure or refusal on the part of the respondent to comply with timely filed discovery."

735 ILCS 5/2—402 (West 2000).

Plaintiff first argues the statute of limitations is not an issue in this case because the rules of civil procedure extend the statute of limitations in numerous situations similar to the present case. For example, plaintiff could have initially named Drs. Hall, Saalborn, and Francken as defendants and filed an affidavit 90 days later pursuant to section 2—622 (735 ILCS 5/2—622 (West 2000)). Alternatively,

plaintiff could have named Drs. Hall, Saalborn, and Francken as defendants and requested an extension of time to file a section 2—622 affidavit; trial courts have discretion to grant such extensions. *Tucker v. St. James Hospital*, 279 Ill. App. 3d 696, 704, 665 N.E.2d 392, 396 (1996). Plaintiff concludes it would have been possible for her to have an extension without utilizing section 2—402.

Plaintiff also makes a "slippery-slope" argument and theorizes if respondents in discovery have their way, trial courts will have to hold evidentiary hearings to determine whether sufficient discovery occurred during the six-month period to allow conversion of respondents in discovery. Plaintiff contends trial courts would be forced to delve into the minutia of what discovery occurred and the extent of discovery. Plaintiffs will not only have to conduct formal discovery to convert respondents, but must also uncover or discover something *new* that was not available to the plaintiff when the initial complaint was filed. Further, plaintiff highlights a section 2—622 physician's report can be based on informal discovery, research, and the investigation of witnesses, events, parties, and documents. Therefore, since statutory language contains no requirement mandating formal discovery occur, plaintiff argues, the court should not impose one.

*Torley v. Foster G. McGaw Hospital*, 116 Ill. App. 3d 19, 452 N.E.2d 7 (1983), specifically states section 2—402 does not require a plaintiff to conduct discovery with respondents before converting them into defendants (735 ILCS 5/2—402 (West 2000)). "Although defendants assert that the 'evidence' to which the statute refers means that which has been adduced by means of discovery during the six-month statutory period, we see no reason to engraft such a requirement on this procedure where the legislature itself has not done so." *Torley*, 116 Ill. App. 3d at 23, 452 N.E.2d at 9. In *Torley*, a plaintiff failed to ask the trial court for leave to convert respondents in discovery into defendants. Although *Torley* is typically cited for the proposition a plaintiff must seek leave of the court to convert a respondent in discovery into a defendant, the aforementioned quote from *Torley* is accurate in its determination that the legislature chose not to explicitly mandate plaintiffs engage in discovery before converting respondents into defendants.

Respondents in discovery argue the *Torley* court was faced with a different set of facts than those presently before the court; therefore, the *Torley* comment was *dicta* and should not be applied in this case. In response to these arguments, we concede that although there were different facts in *Torley*, it is obvious the *Torley* court considered the issue presently before us. We follow the *Torley* court because the fundamental principle of statutory construction is that courts are to

give effect to the intent of the legislature. *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 246, 641 N.E.2d 440, 446 (1994). The first step in determining legislative intent is to look at the plain meaning of the statutory language. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 283, 641 N.E.2d 402, 410 (1994). Where, however, the legislature's intent is not clear from the face of the statute, or the language is susceptible to more than one interpretation, it is proper to look elsewhere for legislative intent. *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51, 563 N.E.2d 465, 477 (1990).

■ One reason section 2—402 was created was to provide plaintiff's attorneys with a means of filing medical malpractice suits without naming uninvolved doctors as defendants. *Clark v. Brokaw Hospital*, 126 Ill. App. 3d 779, 467 N.E.2d 652 (1984). Sections 13—212 and 2—402 of the Code are clear that if a plaintiff knows of an individual's liability before the two-year statute of limitations has expired, then the plaintiff has an obligation to name the party as a defendant to conform to section 13—212. 735 ILCS 5/13—212, 2—402 (West 2000). However, if there is doubt as to liability, then the plaintiff may name the individual as a respondent in discovery and utilize the six-month window to discover if the evidence demonstrates the individual should be converted. 735 ILCS 5/2—402 (West 2000).

Respondents in discovery highlight the second paragraph of section 2—402, which states, "Persons or entities so named as respondents in discovery shall be required to respond to discovery by the plaintiff in the same manner as are defendants and may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action." 735 ILCS 5/2—402 (West 2000). Respondents in discovery interpret the phrase, "if the evidence discloses," as referring to evidence obtained by discovery; otherwise, section 2—402 simply extends the statute of limitations period an additional six months. Although the legislature may have contemplated plaintiffs would utilize the six-month extension of the statute of limitations provided by section 2—402 to engage in additional discovery against respondents and determine if a respondent's action or inaction had exposed it to liability, the legislature did not explicitly include that requirement.

Further, in 1995 the legislature amended section 2—402. Pub. Act 89—7, § 15, eff. March 9, 1995 (1995 Ill. Laws 284, 288-89) (amending 735 ILCS 5/2—402 (West 1994)). The legislature's amendments placed some limitations on plaintiff's claims. Specifically, the legislature made the following additions to the statute: (1) "[f]ictitious defendants may not be named in a complaint in order to designate respondents in discovery"; and (2) "[n]o extensions of this [six-]month period shall be

permitted unless the plaintiff can show a failure or refusal on the part of the respondent to comply with timely filed discovery." 735 ILCS 5/2—402 (West Supp. 1995). If the legislature intended to engraft a requirement regarding the type or amount of discovery plaintiffs must engage in before converting a respondent in discovery into a defendant, we conclude it would have done so. We are hesitant to impose burdens on plaintiffs utilizing section 2—402 when the legislature has declined to do so. The legislature has not seen fit to amend the statute in this fashion, and we will not, under guise of statutory construction, interject this discovery requirement into the statute. *In re Mary Ann P.*, 202 Ill. 2d 393, 409 (2002); *People v. Tucker*, 167 Ill. 2d 431, 437, 657 N.E.2d 1009, 1013 (1995) (court would not rewrite statute under guise of statutory construction).

Further, we do not wish to discourage plaintiffs from naming doctors as respondents in discovery since there is a benefit to doctors when plaintiffs name them as respondents, as opposed to defendants. Similarly, in *Moscardini v. Neurosurg, S.C.*, 269 Ill. App. 3d 329, 336, 645 N.E.2d 1377, 1382 (1994), the court declined to place additional requirements on the content of a section 2—622 physician's report. In that case, the court held an unverified physician's letter, accompanied by an attorney affidavit, would be sufficient to establish probable cause pursuant to the requirements of section 2—622 for purposes of filing the initial complaint and converting respondents in discovery into defendants. We are adopting the language of *Torley* and find the trial court abused its discretion by not allowing plaintiff's motion to convert.

### B. Sufficiency of Dr. Nager's Section 2—622 Physician's Report as to Dr. Francken

■ To demonstrate a physician has the qualifications to testify as an expert in a medical malpractice case, plaintiff must show the doctor has expertise in dealing with the plaintiff's medical problem and treatment. *Silverstein v. Brander*, 317 Ill. App. 3d 1000, 1006, 740 N.E.2d 357, 362 (2000), citing *Jones v. O'Young*, 154 Ill. 2d 39, 43, 607 N.E.2d 224, 226 (1992). Whether the expert is qualified to testify is not dependent on whether he is a member of the same specialty but, rather, whether the allegations concern matters within his knowledge and observation. *Silverstein*, 317 Ill. App. 3d at 1006, 740 N.E.2d at 362, citing *Jones*, 154 Ill. 2d at 43, 607 N.E.2d at 226. Further, a physician licensed to practice is qualified to practice medicine in all its branches, for purposes of the statutory requirement that a medical malpractice plaintiff attach to his complaint an affidavit declaring a qualified health-care professional has determined there is reasonable

and meritorious cause for filing his action. *Ingold v. Irwin*, 302 Ill. App. 3d 378, 384, 705 N.E.2d 135, 140 (1998).

■ Respondent in discovery Dr. Francken argues as follows: (1) Dr. Nager was not qualified to interpret a stomach X ray or comment on the duties of a radiologist; and (2) Dr. Nager's report did not describe how Dr. Francken deviated from the standard of care. Specifically, as to issue (2), Dr. Francken argues Dr. Nager's report states Dr. Francken read the X rays correctly and his report identified the foreign object and its location. Dr. Nager's report only demonstrates those who treated Kylee after the X rays were taken failed to look at the X-ray report. Therefore, based on Dr. Nager's own findings, there is no probable cause presented to convert him from a respondent in discovery to a defendant.

Plaintiff argues Dr. Nager is not criticizing a specialized standard of care related solely to radiologists; instead, Dr. Nager's criticisms deal with Dr. Francken's failure to timely report or notify other doctors of his findings. Therefore, any physician familiar with the standards for reporting and notifying doctors of X-ray reports is qualified to render an opinion.

In Dr. Nager's section 2—622 report, he describes his qualifications and discusses the events leading up to the death of Kylee Bivens. In his synopsis, Dr. Nager states, "[t]he [X] rays were interpreted by Gregory A. Francken, M.D., and were transcribed ***. The [X-]ray interpretation was not noted by any of the clinicians who subsequently treated the patient." Near the end of his report, Dr. Nager states there is reasonable and meritorious evidence for pursuing a cause of action against Dr. Francken, as well as others. Dr. Nager goes on to list the faults of the parties. He lists one finding in relation to Dr. Francken: "Dr. Francken failed to interpret and/or report [X-]ray studies independently and/or by consulting a radiologist, which would have revealed the actual, readily discoverable cause for Kylee Bivens' signs and symptoms."

We find Dr. Nager's section 2—622 physician's report, although not artfully phrased, minimally sufficient to convert Dr. Francken from a respondent in discovery into a defendant. The legislature has imposed a standard on physicians when determining a medical malpractice claim is meritorious; we conclude doctors do not accept this duty lightly. If Dr. Francken wishes to challenge the claims brought against him, he may file a motion to dismiss at a later date.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's denial of plaintiff's motion to convert respondents in discovery into defendants

and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

COOK and STEIGMANN, JJ., concur.