# Illinois Official Reports

## Appellate Court

---

### *Xeniotis v. Satko*, 2014 IL App (1st) 131068

---

| | |
|---|---|
| Appellate Court Caption | FROSINI XENIOTIS, Plaintiff-Appellant, v. CYNTHIA SATKO, D.D.S., M.S., P.C., d/b/a Satko Oral Surgery, and CYNTHIA SATKO, D.D.S., Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-13-1068 |
| Filed | June 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dental malpractice action alleging that defendant was negligent in performing a dental implant surgery, the trial court properly denied plaintiff's motion for partial summary judgment where she failed to present the required expert medical testimony necessary to support her claim that her informed consent was not obtained for the procedure and a question of fact existed as to the nature of the discussions plaintiff had with defendant with regard to the risks and alternatives involved, and the trial court properly struck the affidavit of plaintiff's expert and properly entered summary judgment for defendant, since the expert's affidavit contradicted his deposition testimony that he had no opinion on the informed consent claim, and without the affidavit, there was no expert testimony on the informed consent claim and defendant had the right to summary judgment as a matter of law. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-9078; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Peter R. Coladarci, Ltd., of Chicago, for appellant.

Julie A. Teuscher, Marc F. Benjoya, and Robin B. Levin, all of Cassiday Schade, LLP, of Chicago, for appellees.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal involves two summary judgment rulings resolving the issue of informed consent in a dental malpractice suit. Frosini Xeniotis sued Dr. Cynthia Satko and her corporation for damages resulting from allegedly negligent dental implant surgery, which Xeniotis claims Dr. Satko performed without informed consent.

¶ 2    The trial court denied Xeniotis's motion for partial summary judgment on her informed consent allegation, and later granted Dr. Satko's motion for summary judgment on the same issue. Xeniotis dismissed the remaining counts of her complaint and filed this appeal.

¶ 3    On Xeniotis's motion, the court held: (i) neither the standard of disclosure nor expert medical evidence of Dr. Satko's failure to conform to that standard was established; and (ii) a factual issue existed as to whether the nature of the discussions between Dr. Satko and Xeniotis met the standard of care for disclosure and informed consent. We find both bases support the trial court's denial of Xeniotis's motion for partial summary judgment.

¶ 4    On Dr. Satko's motion for summary judgment, the trial court struck Xeniotis's expert's affidavit as an improper attempt to change his deposition testimony. The trial court then found that without expert testimony, Xeniotis could not establish the professional standard of disclosure for dental implant procedures or that Dr. Satko failed to conform to the professional standard of disclosure. Again, we agree with the trial court in striking the affidavit and granting Dr. Satko's motion for summary judgment on the issue of informed consent.

## BACKGROUND

¶ 6    In August 2008, Xeniotis's general dentist referred her to Dr. Cynthia Satko, an oral surgeon, for an evaluation. Xeniotis sought treatment because of a unique configuration, which had no functional impact, but was not esthetically pleasing to her. Xeniotis's left upper permanent tooth came in behind her primary (baby) tooth, which never fell out.

¶ 7    Xeniotis understood that to address her concerns, an oral surgeon would have to remove both her permanent tooth and the baby tooth. The issue was how the space left by their removal would be filled. Dr. Satko recommended an implant during the initial consultation with Xeniotis on August 7, 2008. An implant involves surgically inserting a titanium screw–the implant–into the supporting bone and attaching a small fake tooth, followed by a crown once the posts have integrated into the patient's jaw.

¶ 8                                    Implant Procedure

¶ 9    The next day, Dr. Satko extracted tooth number 6 (Xeniotis's permanent canine) and baby tooth designated "C." Dr. Satko then placed the implant next to the extraction site, as well as a bone graft.

¶ 10    Over the next year and a half, the implant posts failed to integrate into Xeniotis's jaw. Several attempts to replace the posts failed. Xeniotis contends that as a result, she suffered a permanent defect and injury to her upper jaw.

¶ 11                                    Procedural History

¶ 12    On August 6, 2010, Xeniotis filed a dental malpractice action against Dr. Satko and her practice. Xeniotis alleged that Dr. Satko failed to obtain her informed consent before performing the procedure, failed to perform the implant procedure in stages, negligently performed the implant surgery, and failed to recommend conservative measures. Xeniotis's counsel attached an affidavit pursuant to section 2-622 of the Code of Civil Procedure (Code) to the complaint attesting that a consulting dentist, Dr. Arnold Gorchow, opined that Xeniotis received negligent care and that there was a reasonable and meritorious cause for filing the lawsuit. 735 ILCS 5/2-622 (West 2010). The affidavit contained no certification that as the consulting dentist Dr. Gorchow concluded that a reasonable health professional would have informed Xeniotis of the consequences of the dental implant procedure. Also attached to the complaint was Dr. Gorchow's report in which he opined that Xeniotis's care should have been performed in several stages.

¶ 13    In her complaint, Xeniotis alleges Dr. Satko persuaded her during their initial consultation that she would be an excellent candidate for an implant and failed to disclose the realistic probability that the implant might fail.

¶ 14    Xeniotis ended her patient relationship with Dr. Satko in February 2010 and sought a second opinion from Dr. Gorchow at that time. Dr. Gorchow examined Xeniotis and identified a defect in her upper jaw as one of the largest he had ever seen.

¶ 15    During the litigation, Dr. Gorchow was deposed as a treating dentist under Illinois Supreme Court Rule 213(f)(2). Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2007). Xeniotis reserved the right to engage and retain Dr. Gorchow as a Rule 213(f)(3) expert witness. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007).

¶ 16                                    Xeniotis's Deposition

¶ 17    At her deposition, Xeniotis acknowledged that since 2004, she had been continuously under medical care, had been hospitalized three times for her medical condition, and was taking medication.

¶ 18    During the summer of 2008, Dr. Kula recommended an implant procedure to Xeniotis. Xeniotis testified Dr. Kula explained the procedure and told her she would not have to worry about the implant becoming loose or falling apart. Dr. Kula referred Xeniotis to Dr. Satko.

¶ 19    On August 7, 2008, Xeniotis met with Dr. Satko. During this initial consultation, Xeniotis filled out and signed an information sheet. Immediately above Xeniotis's signature, the form stated that the patient certified that he or she consented to the performance of whatever operation or treatment was deemed necessary or advisable. Xeniotis did not disclose that she was taking medication or under medical care.

¶ 20    Dr. Satko met with Xeniotis that day and discussed Xeniotis's goals, as well as the implant procedure. Xeniotis testified that Dr. Satko advised her that the implant would look good, be stable and last forever. Although Xeniotis remembered Dr. Satko discussing the implant procedure, as well as describing what she was going to do and her plan for the implant, Xeniotis could not recall the conversations. Xeniotis was unsure whether Dr. Satko provided information about possible complications of the implant procedure, but nevertheless denied that Satko informed her that the implant might fail.

¶ 21    Dr. Satko performed the extraction and implant surgery the following day.

¶ 22    Later, Dr. Kula advised Xeniotis that due to shifting, the implant would need to be removed. In October 2008, Dr. Satko removed Xeniotis's first implant. Satko advised Xeniotis that she would pack the area until it healed, about six months, and then insert another implant. Satko placed the second implant in 2009. Xeniotis did not recall anything Satko told her that day. Following the second implant, Dr. Kula again informed Xeniotis that the implant had shifted. Kula advised Xeniotis that the second implant would need to be removed as well and recommended putting in a bridge.

¶ 23                        Dr. Satko's Deposition

¶ 24    Dr. Satko testified that she met Xeniotis on a referral from Dr. Kula. Xeniotis was concerned about her appearance and wanted an implant as quickly as possible. Satko testified her customary practice involved discussing all of the treatment options with a patient before deciding on a course of treatment. She recalled talking with Xeniotis about the alternatives to an implant, including a resin-bonded bridge, placement of a fake tooth, and braces. Xeniotis wanted the implant.

¶ 25    Satko testified her custom and practice was to fully inform patients about all aspects of their care before getting their consent. Satko gave Xeniotis a brochure referencing that Satko would explain "what you can expect from the surgery, as well as long term risks, benefits, care options and complications so that you can make an informed decision regarding implant treatment." Satko would advise patients about what an implant is, how it will be placed, and the risks, complications, and alternatives to treatment. Also, she always provides her patients with an opportunity to ask questions and gave Xeniotis an opportunity to ask questions. Satko testified that after being fully informed, Xeniotis accepted the plan to move forward with the implant.

¶ 26    Satko recalled that during the initial consultation, Xeniotis completed and signed a patient information form seeking details of any medications being taken and the identity of all treating physicians. Xeniotis disclosed neither.

¶ 27    On August 8, 2008, Dr. Satko performed the extraction and implant surgery. She saw Xeniotis for a postoperative checkup on August 14. At that time, the site appeared fine. When Xeniotis returned on August 28, Satko did not like the way the site looked and advised Xeniotis of her concerns and of the possibility of a second procedure.

¶ 28    On October 7, 2008, Dr. Satko concluded Xeniotis's implant was failing. Dr. Satko removed the implant and replaced the graft. She advised Xeniotis that implants can fail at six to eight weeks. Satko could not determine why the implant failed and believed a second implant would be risky. Dr. Satko discussed the second implant with Xeniotis and asked Xeniotis what she wished to do. Xeniotis chose to proceed with the second implant.

¶ 29    After the first implant had been removed, the site looked "pretty good" and the soft tissue seemed to be healing. On January 30, 2009, Dr. Satko noted the bone graft at the location where the implant used to be was not taking. Xeniotis had chronic inflammation. Satko explained the options to Xeniotis–regrafting or giving the area more time to heal before placing the second implant.

¶ 30    Dr. Satko placed a second implant on March 13, 2009. At a follow-up appointment in April, Satko noted a fistulous tract, which indicated the implant area was not healing. Between May and August, measures were taken to help the area heal and save the second implant. In September, Dr. Satko was in touch with Dr. Kula to figure out why the implant was failing and the best course of action. During two office visits in October, Dr. Satko noted the area was still not healing. Satko recalled that on November 5, she discussed the second implant failure at length with Xeniotis. Satko removed the second implant in January 2010.

¶ 31    Satko testified that she fully complied with the standard of care throughout her treatment of Xeniotis. She opined that her treatment did not cause or contribute to Xeniotis's claimed injuries. According to Satko, even when a reasonably careful oral surgeon complies with the standard of care, a percentage of patients experience implant failure caused by an infection, a lack of blood supply to the area, nonintegration or healing of the implant, interference by medications with the implant integration, immune-compromised medical conditions, or poor nutrition.

¶ 32    Satko testified that if Xeniotis had informed her about the medications she was taking, Satko would not have found her to be a good candidate for implant surgery and would not have performed the procedure. The medications Xeniotis was taking were known to contribute to a lack of blood supply and lack of healing. And, she testified that had she known about Xeniotis's medical conditions, it is unlikely she would have recommended the procedure.

¶ 33                          Dr. Arnold Gorchow's Deposition

¶ 34    Dr. Gorchow testified at his deposition that he is a general dentist who performs implant surgery. Gorchow saw Xeniotis on February 23, 2010, and inserted a partial denture. Gorchow reviewed Dr. Satko's records concerning her care of Xeniotis. Because he did not see the preoperative condition of Xeniotis, he could not opine whether Satko breached the standard of care. He agreed, however, that implants can fail absent a breach of the standard of care.

¶ 35    Gorchow stated that a clinical examination is vital in determining the reasonableness of a certain course of treatment. He could not give an opinion on whether Satko's treatment

breached the standard of care because he did not know how much of a defect was present at the time she removed the two teeth. If there had not been a substantial defect, placing the implant at the same time would have been reasonable.

¶ 36                                    Summary Judgment Motions
¶ 37                          Xeniotis's Motion for Partial Summary Judgment
¶ 38     Xeniotis filed a motion for partial summary judgment on subparagraph 8(p) of her complaint, in which she alleged a lack of informed consent. In response, Dr. Satko argued that the report of the reviewing professional, as required under section 2-622(d) of the Code, did not support a claim based on the failure to obtain informed consent and, thus, that claim should be dismissed. Satko further contended summary judgment should be denied because: (i) there was no expert testimony to establish that Dr. Satko failed to conform to the professional standard for disclosure for dental implant procedures; (ii) there is a question of fact as to whether informed consent was obtained; (iii) Xeniotis provided inaccurate historical information creating a question of fact as to whether Dr. Satko could have obtained informed consent; and (iv) the alleged failure to disclose did not cause injury to Xeniotis. Xeniotis replied that no expert witness was required because the procedure was cosmetic.

¶ 39     The trial court concluded that the attorney's affidavit and physician's report violated section 2-622(d), in that Gorchow provided no criticisms of Satko's duty to disclose or her failure to do so. Nonetheless, because Dr. Satko answered the complaint, the court held she could not challenge Xeniotis's pleading for failure to state a cause of action.

¶ 40     The trial court denied Xeniotis's motion for partial summary judgment, holding that questions of fact existed as to what information regarding the risks of and alternatives to the implant procedure were given to Xeniotis and whether any information could be considered sufficient to meet the standard of care for disclosure. The court also ruled that the standard of care of informed consent and the adequacy of Dr. Satko's disclosure had to be shown by expert evidence.

¶ 41                          Dr. Satko's Motion for Summary Judgment
¶ 42     On September 4, 2012, Dr. Satko, in a motion for summary judgment, argued: (i) Xeniotis's section 2-622 report did not support a claim for lack of informed consent; (ii) Xeniotis failed to establish the standard for disclosure through expert testimony; and (iii) the facts presented during the depositions showed that informed consent had been obtained.

¶ 43     Xeniotis responded by attaching the affidavit of Dr. Gorchow. In his affidavit, Dr. Gorchow attested he was now of the opinion that Dr. Satko breached the standard of care because her records failed to describe "the risks of failure or other complications of the implant procedure." Dr. Satko replied and included a motion to strike Dr. Gorchow's affidavit as an improper attempt to change his deposition testimony.

¶ 44     The trial court struck Dr. Gorchow's affidavit, in part, because it contradicted his deposition testimony. The court found significant Dr. Gorchow's review of Dr. Satko's records on Xeniotis's care at the time of his deposition and that "despite that review, [Gorchow] did not have an opinion regarding informed consent."

¶ 45     The court held that without Dr. Gorchow's affidavit, Xeniotis had no support for the failure to obtain informed consent claim. Accordingly, the trial court granted summary judgment in favor of Dr. Satko on the issue of informed consent.

¶ 46     On February 14, 2013, Xeniotis filed a motion to vacate the court's order granting summary judgment in favor of Dr. Satko and a motion to reconsider and clarify. Xeniotis requested an opportunity to be heard on Dr. Satko's motion to strike. Xeniotis argued the trial court erroneously concluded that copies of deposition transcripts had not been attached to Dr. Gorchow's affidavit. In her motion to reconsider, Xeniotis did not challenge the other bases for the trial court's grant of summary judgment in favor of Dr. Satko. That same day, Xeniotis requested a voluntary dismissal of her action.

¶ 47     The trial court denied Xeniotis's motion to vacate, but granted her motion to clarify. In its order, the trial court acknowledged it had full deposition transcripts of Xeniotis and Dr. Satko when it considered the parties' briefs on Dr. Satko's motion for summary judgment. The court voluntarily dismissed the case without prejudice.

¶ 48                                    ANALYSIS

¶ 49     Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2010). The trial court may grant summary judgment after considering "the pleadings, depositions, admissions, exhibits, and affidavits on file in the case" and construing that evidence in favor of the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Summary judgment aids in the expeditious disposition of a lawsuit, but it is a drastic measure that should be allowed only "when the right of the moving party is clear and free from doubt."*Id.* If the plaintiff fails to establish any element of his or her claim, summary judgment is appropriate. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). We review the trial court's decision to grant summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 50     In Illinois, before obtaining a patient's consent, doctors have a common law duty to inform the patient of the foreseeable risks and results of a surgical procedure, and the reasonable alternatives to that procedure. See *Davis v. Kraff*, 405 Ill. App. 3d 20, 28-29 (2010) (citing *Coryell v. Smith*, 274 Ill. App. 3d 543, 546 (1995)). A doctor must disclose the risks that a reasonable medical professional would have disclosed under similar circumstances. *Guebard v. Jabaay*, 117 Ill. App. 3d 1, 6 (1983).

¶ 51     In a malpractice action based on the doctrine of informed consent, the plaintiff must plead and prove four essential elements: "(1) the physician had a duty to disclose material risks; (2) he failed to disclose or inadequately disclosed those risks; (3) as a direct and proximate result of the failure to disclose, the patient consented to treatment she otherwise would not have consented to; and (4) plaintiff was injured by the proposed treatment."*Coryell*, 274 Ill. App. 3d at 546. The failure of the physician to conform to the professional standard of disclosure must be proven by expert medical evidence and the failure to disclose must have proximately caused the plaintiff's injury. *Guebard*, 117 Ill. App. 3d at 6.

¶ 52                    Denial of Xeniotis's Motion for Partial Summary Judgment

¶ 53      The trial court denied Xeniotis's motion on two bases. Dr. Satko contends that either of those two bases, standing alone, was sufficient to deny Xeniotis's motion for partial summary judgment. We agree.

¶ 54                        Failure to Offer Expert Medial Testimony
                                  as to the Standard of Care

¶ 55      The trial court held that Xeniotis failed to support her informed consent claim with expert medical testimony as required by law.

¶ 56      In her brief, Xeniotis contends that "expert testimony is not required to prove proximate cause in a case involving an elective, cosmetic procedure." Xeniotis cites two cases, *Zalazar v. Vercimak*, 261 Ill. App. 3d 250 (1993), and *Smith v. Marvin*, 377 Ill. App. 3d 562 (2007), as support for her position.

¶ 57      As Dr. Satko points out, however, that was not a basis on which the trial court denied Xeniotis's motion. Rather, the trial court specifically agreed with Xeniotis's position that expert testimony is not required to prove proximate cause in an informed consent case.

¶ 58      The court ruled, however, that expert medical testimony was required to establish the standard of care with respect to the necessary disclosures and Dr. Satko's beach of that standard. Xeniotis does not challenge this basis for the trial court's decision and, therefore, under Illinois Supreme Court Rule 341, she has forfeited her right to do so. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 59      The trial court's determination that the required disclosure, and whether that disclosure was adequate, must be shown by expert evidence conforms to well-settled law on the burden of proof in an informed consent claim. See *Guebard v. Jabaay*, 117 Ill. App. 3d 1, 6 (1983) (physician's failure to conform to standard of care must be proven by expert evidence; absent such evidence, no liability); see also *Magana v. Elie*, 108 Ill. App. 3d 1028, 1032 (1982); *Taber v. Riordan*, 83 Ill. App. 3d 900, 904 (1980).

¶ 60      Xeniotis failed to offer expert evidence establishing the standard of care against which Satko's disclosure of the risks and alternatives to treatment was to be measured and, therefore, as a matter of law, she has no right to present her allegations of medical negligence to a jury. See *McWilliams v. Dettore*, 387 Ill. App. 3d 833, 845 (2009) ("Before a medical negligence case *** can reach a jury, a plaintiff must [establish] *** the standard of care against which the conduct of the defendant doctor may be measured." (citing *Walski v. Tiesenga*, 72 Ill. 2d 249, 255 (1978))).

¶ 61                              Existence of a Question of Fact

¶ 62      As a second basis to deny Xeniotis's motion for partial summary judgment, the trial court held that a question of fact existed as to the nature of the discussions between Satko and Xeniotis concerning the risks and alternatives of the implant procedure.

¶ 63      The record supports the trial court's conclusion. Xeniotis testified at her deposition that Dr. Satko discussed the implant procedure with her. She could not recall the substance of her conversation with Dr. Satko, but acknowledged that she spoke with Dr. Satko about her treatment plan. Satko testified she gave Xeniotis a patient brochure and explained the various

- 8 -

treatment options, risks, complications, and alternatives to an implant procedure. Dr. Satko testified it was her practice to fully inform patients about the care and treatment she planned before getting their consent. Dr. Satko recalled discussing the treatment options with Xeniotis, including a resin-bonded bridge, the placement of a fake tooth, or braces. Dr. Satko testified she "spent a long time talking to [Xeniotis] about the different options and[ ] then *** let her talk and see what she wanted."

¶ 64    The record supports the trial court's conclusion that a question of fact exists concerning whether Dr. Satko informed Xeniotis of the risks and alternatives of the implant procedure. Hence, the trial court properly denied Xeniotis's request for partial summary judgment.

¶ 65    Although Xeniotis failed to challenge either of these bases on which the trial court denied her motion for partial summary judgment and, therefore, forfeited her right to do so, even had she challenged the merits, as we have explained, she would not prevail. The trial court properly denied her motion for partial summary judgment.

¶ 66                    Grant of Dr. Satko's Motion for Summary Judgment

¶ 67    With respect to Dr. Satko's summary judgment motion, Xeniotis only takes issue with one basis for the court's ruling–the court's order striking Dr. Gorchow's affidavit.

¶ 68    There is a split of authority on the question of what standard of review to apply to a trial court's ruling on a motion to strike an affidavit. This court applied a *de novo* standard in reviewing a trial court's ruling on a motion to strike an affidavit in conjunction with a motion for summary judgment (*Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 46 (2008)), whereas our supreme court applied an abuse of discretion standard in the same circumstances (*In re Estate of Hoover*, 155 Ill. 2d 402, 420 (1993)). Our supreme court considered the trial court's ruling to be an evidentiary one, subject to its discretion. *Hoover*, 155 Ill. 2d at 420. In *Jackson v. Graham*, 323 Ill. App. 3d 766, 774 (2001), the Fourth District acknowledged this split and held, "when the trial court rules on a motion to strike a Rule 191 [(Ill. S. Ct. R. 191 (eff. Aug. 1, 1992))] affidavit in conjunction with a summary judgment motion, we review *de novo* the trial court's ruling on the motion to strike."

¶ 69    Under either standard, the trial court appropriately struck Dr. Gorchow's affidavit.

¶ 70    The trial court's decision to strike Dr. Gorchow's affidavit as a change in testimony complies with Illinois law. See *Morris v. Margulis*, 197 Ill. 2d 28, 37 (2001) (submission of affidavit inconsistent with individual's earlier deposition testimony will not prevent summary judgment); see also *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 421-22 (1991) (nonmovant cannot use affidavit to contradict earlier deposition testimony to place material facts in issue).

¶ 71    The trial court properly struck Dr. Gorchow's affidavit as an improper attempt to change his deposition testimony. At the time of his deposition, Gorchow testified he had no opinion regarding whether Dr. Satko informed Xeniotis of the foreseeable risks and results of an implant procedure before obtaining her consent. He said he had reviewed Xeniotis's dental records and could not say if Dr. Satko breached the standard of care because he did not see Xeniotis before the procedure. Gorchow testified that a clinical examination before the procedure was necessary to make this determination.

¶ 72    Xeniotis contends that Dr. Gorchow's affidavit was a "supplementation" to the deposition, but it is no such thing. Actually, the affidavit is an alteration of Dr. Gorchow's

earlier opinion because he still had no knowledge about Xeniotis's preoperative condition, a fact he testified was necessary before he could opine about the care she received.

¶ 73 Moreover, in his affidavit, Dr. Gorchow never opined that Dr. Satko deviated from the standard of care in her disclosures to Xeniotis about the risks and alternatives to the procedure. His opinion addresses only the care Xeniotis received, not what she was told before she elected to proceed with the implant procedure.

¶ 74 The record supports the trial court's determination that Dr. Gorchow's affidavit fails to raise a question of fact with respect to Dr. Satko's motion for summary judgment.

¶ 75 After the trial court struck Dr. Gorchow's affidavit, Xeniotis had no expert testimony on the informed consent claim. Because the alleged failure of a medical professional to conform to the standard of disclosure in an informed consent case must be proven by expert medical evidence (*Jabaay*, 117 Ill. App. 3d at 6), Xeniotis's failure to provide this evidence entitled Dr. Satko to summary judgment as a matter of law.

¶ 76 Xeniotis contends she was improperly denied an opportunity to respond to Dr. Satko's motion to strike Dr. Gorchow's affidavit. In support, she cites *Silverstein v. Brander*, 317 Ill. App. 3d 1000 (2000), and *Peterson v. Randhava*, 313 Ill. App. 3d 1 (2000).

¶ 77 *Silverstein* is factually distinct. There, the defendant moved verbally on the day of trial to bar the plaintiff's expert from testifying. *Silverstein*, 317 Ill. App. 3d at 1003. The next day, the plaintiff filed a written response. *Id.* After that, the defendant filed a written motion for summary judgment. *Id.* The trial court denied the plaintiff's request for additional time to respond to the defendant's motion for summary judgment and set the motion for hearing less than one day after the defendant presented it. *Id.* at 1003-04. On appeal, this court held that the defendant failed to comply with Cook County Circuit Court Rule 2.1(e) (eff. July 1, 1976), which prohibits a hearing on a motion for summary judgment until 10 days after service of the motion. *Id.* at 1005, 1008.

¶ 78 *Peterson*, the second case Xeniotis relies on, is also factually distinct. In *Peterson*, the plaintiff argued the trial court erred by *sua sponte* changing the defendant's motion for sanctions into a motion for summary judgment. *Peterson*, 313 Ill. App. 3d at 13. On appeal, this court determined, just as we did in *Silverstein*, that the trial court's procedure failed to comply with Cook County Circuit Court Rule 2.1(e). *Id.* at 11.

¶ 79 Xeniotis, on the other hand, was given sufficient notice of Dr. Satko's motion for summary judgment. She had nearly three months to respond to the motion with an expert's supporting affidavit. Xeniotis chose to attach the affidavit of Dr. Gorchow, an affidavit that contradicted his deposition testimony. Her decision to file Dr. Gorchow's affidavit rather than an affidavit of a health professional whose opinion would not be subject to a motion to strike does not support a finding that she was denied an opportunity to respond. Just because her response was ineffective does not mean she was not afforded the opportunity to respond.

¶ 80 Dr. Gorchow's affidavit was first filed in response to Dr. Satko's motion for summary judgment. Dr. Satko challenged the propriety of Dr. Gorchow's affidavit in her reply in support of her motion for summary judgment. This was Dr. Satko's first opportunity to challenge the affidavit. Dr. Satko challenged the affidavit because Dr. Gorchow was attempting to alter his earlier deposition testimony through the contradictory affidavit. Because this basis was incurable by Xeniotis, she cannot claim prejudice based on the alleged denial of an opportunity to cure the defect.

## CONCLUSION

As a matter of law, Xeniotis failed to state a claim for lack of informed consent.

The trial court properly struck Dr. Gorchow's affidavit as an improper attempt to change his deposition testimony. In a medical malpractice case, the plaintiff bears the burden of proving the elements of her cause of action, including the proper standard of care against which to measure the physician's conduct. Xeniotis's unsupported allegation that Dr. Satko failed to disclose the risks and alternatives of the implant surgery in violation of the standard of care could not support her motion for summary judgment or defeat Dr. Satko's where Xeniotis failed to offer any expert evidence as to the standard of care.

Affirmed.